Sheila Gropper Nelson, SBN 85031
Resolution Law Firm P. C.
50 Osgood Place, 5th Fl.
San Francisco CA 94133
Email: Shedoesbklaw@aol.com
415-362-2221
Attorneys for Arcon Construction Corporation
Debtor-in-possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### [San Francisco Division]

| | |
|---|---|
| In re: | Case No. 24-30679 |
| Arcon Construction Corporation | OBJECTION BY DEBTOR |
|     Debtor & Debtor-in-Possession | ARCON CONSTRUCTION |
| | CORPORATION TO CLAIM |
| | BY ANDY LEE & SHIRLEY LEE |
| | [Claim 16] |
| | DATE:    APRIL 25, 2025 |
| _____/ | TIME:    1:30 P.M. |
| | JUDGE DENNIS MONTALI |

      TO ALL INTERESTED PARTIES, INCLUDING ANDY LEE AND SHIRLEY LEE, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT DEBTOR ARCON CONSTRUCTION CORPORATION OBJECTS TO CLAIM 16 IN ITS ENTIRETY as follows:

      Debtor,  Arcon Construction Corporation, (hereafter Arcon), Debtor and Debtor-in-Possession herein, objects to the claims filed by Andy Lee & Shirley Lee, husband and wife, as a derivative and false claim unsupported and unsupportable as demonstrated on the face of their claim and its attachments.  The claim self-identifies as a derivative claim and the Lees individually and collectively lack standing to bring a claim as against Arcon.

      As a derivative claim, and because no direct, separate or non-derivative evidence is identified by the filing parties, the claim(s) should be withdrawn, or in the alternative disallowed in its entirety.  As a false claim, it should be withdrawn, or disallowed in its entirety. The Lees lack standing.

OBJECTION TO CLAIM 16-16-1 BY LEES - 1

Nothing identified in support of the "claim" can support or demonstrate that the Lees, as individuals, hold any claim as against Arcon.

The Lees and their hypothetical unfiled complaint identify no authority for the proposition that individual members of the identified LLC can assert a derivative claim for negligence owned by an LLC, if any, as against the contracting party Arcon.

FACTS OF THE CASE:

On September 13, 2024 Arcon Construction Corporation filed a voluntary petition in bankruptcy under Chapter 11 Subchapter V.

On February 4, 2025 the Debtor's schedules were amended. At no time were the Lees identified as claimants as against Arcon as they were not. The filing of a false claim does not change that fact.

Arcon Construction Corporation is a duly organized corporation, under the laws of the State of California, with a single shareholder Vladimir Libov.

The alleged claimants, Andy Lee & Shirley Yu Lee, husband and wife, (hereafter the "Lees"), have no claim as against Arcon. They are members of a limited liability company, to wit, 255 Shipley Street LLC, (hereafter Shipley LLC), that had a construction contract with Arcon. The construction contract had a construction loan through Banner Bank. Banner Bank foreclosed on the construction loan as against the real property. The job did not reach completion. Banner Bank is a listed claimant in Arcon's matter.

Arcon was never a member of the Shipley LLC.

The sole shareholder of Arcon is not a member of the Shipley LLC.

None of the members of the Shipley LLC are shareholders of Arcon.

Arcon had no contract with the Lees as individuals.

The Shipley LLC document specifically excludes third party beneficiary claims. (255 Shipley Street LLC, Section 11.8)

Nothing in the Lees claim, [Claim 16 & 16-1], is supported by the evidence required by FRBP 3001 including but not limited to an alleged contract as between the Lees in support of the alleged claim as against Arcon.

The hypothetical complaint self-identifies, on its face, that the claim as alleged is derivative in nature.

OBJECTION TO CLAIM 16-16-1 BY LEES - 2

The derivative nature of the claim cannot be overcome through clever pleading. The claim, as derivative, hypothetical, illusory and contingent, is not entitled to a presumption of validity. The Lees lack standing to bring a claim as against Arcon. To afford the presumption of validity requires evidence of an "underlying contract" which is factually impossible.

The Lees have filed a document which on its face identifies that the hypothetical "claim" is derivative and unsupportable by admissible evidence. (Bankr. Rule 3001)

The claim and the claimants lack standing and have through the act of filing an illusory and intentionally misleading claim acted to abuse the bankruptcy procedure.

VENUE AND JURISDICTION

The plain language of the Bankruptcy Code supports the bankruptcy court's jurisdiction in this case. The filing of a proof of claim is the prototypical situation involving the "allowance or disallowance of claims against the estate," a core proceeding under 28 U.S.C. § 157(b)(2). See, e.g., Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1349-50 (11th Cir. 1999) (stating that a proof of claim is within the bankruptcy court's jurisdiction even if the underlying claim is based on state law); Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987) ("[A] claim filed against the estate is a core proceeding because it could arise only in the context of a bankruptcy.").

OBJECTION TO CLAIM:

11 U.S.C. § 502(a), "[a] claim or interest . . . is deemed allowed, unless a party in interest . . . objects."

Section 502(e)(1)(B) provides, in relevant part: [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

In the instant matter arguably the Lees as members of the Shipley LLC may be liable to Banner Bank on a claim arising from the construction contract between Arcon and Banner. Whether they are liable with Arcon is not identified in their papers.

If the Lees are co-liable that co-liability together with their self-proclaimed contingent and derivative nature of their claim and the absence of standing requires that the claim be disallowed. ("Pursuant to 11 U.S.C. § 502(e)(1)(B), the bankruptcy court must disallow any

OBJECTION TO CLAIM 16-16-1 BY LEES - 3

contingent claim for reimbursement where the claiming entity is co-liable with the debtor. Section 502(e)(1)(B) thus "protects debtors from multiple liability on contingent debts,"" Excluded Lenders v. Serta Simmons Bedding, LLC (In re Serta Simmons Bedding, LLC), No. 23-20181, at *44 (5th Cir. Dec. 31, 2024) citations omitted);  Dant & Russell, Inc. v. Burlington N.R.R. Co. 951 F.2d 246, 248 (9th Cir. 1991)).

The Lees claim is each of those and further identifies on its face that they lack standing and that it is derivative. (Lee's hypothetical "complaint 3rd COA says: "Defendant Arcon owed the Lees, as third-party beneficiaries of the contract between Arcon and the LLC a duty to perform the work on the project in the with the same skill and care that a reasonable general contractor would have used m similar circumstances." (Doc. No 16-1, pg. 9, lines 1-18)

The Lee claim fails in regards to each of the identified deficiencies none of which are capable of correction through amendment.

The derivative and contingent nature of the alleged hypothetical "claim" is an abuse of the courts and parties time and resources.

Claimants have failed to provide supporting admissible evidence, the claim as filed is not entitled to the presumption of validity, the claim as stated identifies that it is derivative and there is no basis on which the claimants can establish standing.

Arcon, as the objector, has identified sufficient evidence to negate more than one element of the alleged Lee claim, not the least of which is that they lack standing. An objecting party bears the burden and must "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." (See Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991); Lundell, 223 F.3d at 1039 (citation omitted))

CONCLUSION:

For all of the foregoing Arcon Construction Corporation respectfully requests that the Court disallow the Lee Claim (Doc No. 16 & 16-1) in its entirety.

WHEREFORE, the Debtor prays that the Court make and enter its Order:

1.     Determining that, under the circumstances, Claimants have received adequate notice and an opportunity to be heard;

2.     The Claimants do not have standing to assert their claims, in whole or in part.

3.     The Claims are not factually supported.

4.     The Claims are not legally supported.

OBJECTION TO CLAIM 16-16-1 BY LEES - 4

5,      The claim is not capable of being ameneded to overcome objection.

6.      The Claim is derivative.

7.      The Claim is contingent.

8.      The Claim is illusory.

9.      Disallowing the Lee Claim in its entirety. and

10.     Granting such other and further relief as may be just and proper.

Dated: March 13, 2025                    Respectfully submitted

                                         _/s/_Sheila Gropper Nelson__
                                         Sheila Gropper Nelson for Debtor Arcon

OBJECTION TO CLAIM 16-16-1 BY LEES - 5

1
2
3
4
5
6
7
8
9
10                              Attachments
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
OBJECTION TO CLAIM 16-16-1 BY LEES - 6

**Fill in this information to identify the case:**

Debtor 1   Arcon Construction Corporation

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **California Northern Bankruptcy Court**

Case number:  **24−30679**

FILED

**U.S. Bankruptcy Court**
**California Northern Bankruptcy Court**

11/22/2024

**Edward J. Emmons, Clerk**

Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

Andy C. and Shirley S. Lee

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Andy C. and Shirley S. Lee

Name

Geoffrey Murry, Esq.
Ad Astra Law Group
582 Market Street, 17th Floor
San Francisco, CA 94104

Contact phone        4157953579

Contact email      gmurry@astralegal.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)          Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                            Proof of Claim                            page 1

**6.** Do you have any number you use to identify the debtor?

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** How much is the claim?

$ 9912200.50

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Creditors' negligence claim against Debtor arising from Debtor's role as general contractor on development project

**9.** Is all or part of the claim secured?

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

Official Form 410                          Proof of Claim                          page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|---|
| | | ☐ Yes. *Check all that apply*: | **Amount entitled to priority** |

| | | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/22/2024
                    _____
                    MM / DD / YYYY

/s/  Geoffrey Murry
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Geoffrey Murry |
|---|---|
| | First name        Middle name        Last name |
| Title | Attorney for creditors Andy C. and Shirley S. Lee |
| Company | Ad Astra Law Group, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 582 Market Street, 17th Floor |
| | Number    Street |
| | San Francisco, CA 94104 |
| | City    State    ZIP Code |
| Contact phone | 415–795–3579        Email    gmurry@astralegal.com |

Official Form 410                              Proof of Claim                              page 3

NOTES ON ATTACHMENTS TO PROOF OF CLAIM OF CREDITORS ANDY C. AND SHIRLEY S. LEE IN ARCON CONSTRUCTION CORP. BANKRUPTCY PROCEEDINGS (24-30679)

1. Draft, unfiled complaint against *inter alia* Debtor Arcon Construction Corp. articulates the bases for the Lee Creditors' negligence cause of action against Debtor, which is the source of the instant proof of claim. The complaint does make allegations against other defendants, but in the absence of apportionment of liability among them, the Lee Creditors include the full amount of their damages in this claim.

2. Lee Creditors' claim amount against Debtor – $9,912,200.50 - is based on the attached project budget and is calculated by adding $6,474,062.00, identified as Borrower's Equity (red text), and $3,438,138.50, which is one-half of the Net Profit ($6,876,277.00 ÷ 2) as the Lee Creditors were 50% owners of the LLC that was established to develop the property.

Geoffrey Murry (SBN 238046)
AD ASTRA LAW GROUP, LLP
582 Market Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 795-3579
Fax: (415) 276-1976
Email: gmurry@astralegal.com

Attorneys for Plaintiffs
Andy C. Lee and Shirley S. Lee

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ANDY C. LEE AND SHIRLEY S. LEE, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREY LIBOV, an individual; STANLEY SAITOWITZ, individually and as trustee of the Stanley Saitowitz Trust dated January 27, 2011; ARCON CONSTRUCTION CORPORATION, a California corporation; NATOMA ARCHITECTS, INC, a California corporation; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: <br><br> **ANDY C. LEE AND SHIRLEY S. LEE'S COMPLAINT FOR DAMAGES** |

## INTRODUCTION

2    1.    This is a case about a real estate development gone awry. Plaintiffs Andy C. Lee

3 and Shirley S. Lee, a married couple, owned and operated a small auto repair business since

4 2004. In 2012, they were able to purchase the land at 255 Shipley Street in San Francisco, where

5 they would be able to operate their business without the worry of a lease or a landlord. In 2016,

6 the Lees entered into a letter of intent with architect Stanley Saitowitz and general contractor

7 Andrey Libov to build a mixed-use commercial/residential complex on the property. The Lees

8 put their land into the project, and the parties obtained a construction loan to fund the

9 development. Saitowitz and Libov then broke their promises to the Lees and grossly mismanaged

10 the construction project into the ground. They caused a default on the loan, and the lender

11 subsequently obtained the property through foreclosure. They also hired Saitowitz's architecture

12 firm, Natoma Architects, and Libov's company, Arcon Construction Corporation, to design and

13 build the project. Natoma Architects was negligent in its design, and Arcon performed the work

14 on the project poorly. As a result, the Lees entire life's work was lost.

15    2.    As a result of the defendants' total incompetence, the Lees have suffered

16 tremendous financial losses and wracking emotional torment and distress. In this lawsuit, they

17 seek to recover damages from the defendants to compensate for their unrecoverable losses.

## PARTIES

19    3.    Andy C. Lee is an adult resident of San Francisco County in California. He is

20 married to Shirley S. Lee.

21    4.    Shirley S. Lee is an adult resident of San Francisco County in California. She is

22 married to Andy Lee. Shirley and Andy are collectively referred to as the Lees or Plaintiffs.

23    5.    Defendant Andrey Libov ("Libov") is an adult resident of San Mateo County in

24 California. He is a general contractor, license number 854946. Plaintiffs are informed and

25 believe and thereon allege that Libov is owner in whole or in part of Arcon Construction

26 Company with offices in San Francisco County.

27    6.    Defendant Stanley Saitowitz ("Saitowitz") is an adult resident of California,

28 county unknown. Plaintiffs are informed and believe and thereon allege that Saitowitz is a trustee

of the Stanley Saitowitz trust with offices in San Francisco County.  Plaintiffs are further informed and believe and thereon allege that Saitowitz is owner in whole or in part of Natoma Architects, Inc.

7.      Defendant Arcon Construction Company ("Arcon") is a California corporation with offices in San Francisco County and San Mateo County. Plaintiffs are informed and believe and thereon allege that Arcon is owned in whole or in part by Defendant Libov.

8.      Defendant Natoma Architects, Inc. ("Natoma"), is a California corporation with offices in San Francisco County.  Plaintiffs are informed and believe and thereon allege that Natoma is owned in whole or in part by Defendant Saitowitz.

9.      Plaintiff is informed and believes that Defendants each acted as the agent of the other, acted within the course and scope of such agency, and acted with the knowledge or consent of the other.

10.     In addition to the Defendants named above, Plaintiffs sue fictitiously named Defendants Does 1 through 10, inclusive, because their names, capacities, status, or facts showing them to be liable to Plaintiffs are not presently known. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend this complaint to show these Defendants' true names and capacities, together with appropriate charging language, when such information has been ascertained.

## JURISDICTION AND VENUE

11.     Jurisdiction in this court is proper because the amount in dispute exceeds the minimum jurisdictional requirements of the court.

12.     Venue in this county is proper because one or more of the Defendants is a resident of San Francisco County, because the property at issue in this case is located in San Francisco County, and because the contracts at issue in this case were made and/or were to be performed in San Francisco County.

Case:24300679 AND FOR ... Filed: 08/03/24 ... Document ... Page 4 of 4
23
CASE NO.:

## FACTUAL ALLEGATIONS

13.     Beginning in 2004, the Lees owned and operated an automobile repair shop in San Francisco.

14.     On or about December 28, 2012, the Lees purchased the Property for $2,400,000. The Lees took out an SBA loan with US Bank for $2,160,000 in order to make the purchase.

15.     In or about November 17, 2014, Saitowitz contacted and met with the Lees to discuss developing the Property. He described a mixed-use commercial/residential development of approximately 47 units, including studio units, one-bedroom units, and some two-bedroom units. (The number of units was later revised downward to 24 residential units, including some three-bedroom units, and one street-level "PDR" (production, distribution, repair) commercial unit.) The Lees told him that they did not know anything about real estate development and that they could not afford the development costs. Saitowitz said that he would explore the project with potential developers and get back to them.

16.     In or about October 19, 2015, Saitowitz and Libov met with the Lees to discuss a proposed development at the Property, including the permit and construction timeline. The Lees asked them to make a written proposal, which they did on or about November 3, 2015. The proposal included a breakdown of costs and expected profit. Ultimately, the Lees signed a letter of intent to develop the Property on January 19, 2016.

17.     Part of the plan to develop the Property included setting up a new limited liability company into which the Lees would transfer the Property and Saitowitz and Libov would make capital contributions. On or about July 26, 2016, the Parties entered into an Agreement to Form 255 Shipley, LLC (the "Shipley LLC Agreement").

18.     The Articles of Organization for 255 Shipley Street, LLC (the "LLC"), were filed on May 24, 2017. Plaintiffs formed the LLC, which was manager-managed, and, pursuant to the subsequently adopted Operating Agreement, Libov and Saitowitz were identified as the managers.

19.     The Lees transferred the Property to the LLC on August 24, 2017, and the deed was recorded on September 1, 2017.

3

Case: 24-3067 ... CASE NO.:

20.     In the meantime, the Parties began re-negotiating the terms of their Agreement to Form. A First Amendment to Agreement to Form 255 Shipley, LLC, (the "Amendment") became effective on October 11, 2017, and replaced the prior agreement. A copy of the Amendment is attached as **Exhibit A**.

21.     The Amendment provided, among other things, as follows:

    a.    Libov and Saitowitz would loan the Lees $10,000 each per month until the commencement of construction.

    b.    Libov and Saitowitz would loan the Lees $5,000 each per month during construction.

    c.    Libov and Saitowitz would pay 50% of the property taxes on the Property.

    d.    The Lees would be permitted to take out an equity line of credit on the Property not to exceed $150,000 to cover their expenses during the construction period. In the event they were unable to obtain an equity line of credit, Libov and Saitowitz would increase their loans to the Lees during construction in paragraph b above to $10,000 each per month.

    e.    Libov and Saitowitz would procure a construction loan that would be used to pay for all "hard costs" of construction, as that term is customarily used in the construction trade and pay off the debt on the Property.

22.     Libov and Saitowitz almost immediately began to make the payments due under paragraph 21(a) above either late or not at all. The Lees had to constantly remind them to make their payments.

23.     On or about June 2021, Banner Bank approved a construction loan for the Property.

24.     Effective August 5, 2021, the Parties entered into a Letter of Understanding Between 255 Shipley, LLC, Partners (the "LOU''). A copy of the LOU is attached as **Exhibit B**. The LOU provided among other things as follows:

    a.    Managers Libov and Saitowitz had obtained a commitment from a third-party lender, MINFIN-SC-TI, LLC, ("MINFIN") to loan the LLC $2

Ad Astra Law Group, LLP

million.

b. A portion of that loan – $1.8 million – would be used to pay off the existing first loan encumbering the Property held by US Bank.

c. Surplus from the MINFIN loan of approximately $200,000 was to be paid to the Lees, and the Lees were to be responsible for paying any interest on those amounts. The Lees declined to accept the loan of $200,000 on these terms because the interest rate was 18%. Plaintiffs are unaware whether Libov and Saitowitz accepted the $200,000 from MINFIN.

d. Libov and Saitowitz agreed to advance loans to the Lees of $10,000 per month until the Completion of Construction, with a 10% late fee applied if the payments were not made by the 10th of the month.

e. Amounts due to the Lees under paragraph 8 of the Amendment as of the date of the LOU were agreed to be $40,000 from Libov and $75,000 from Saitowitz. Libov and Saitowitz agree to pay their respective debt to the Lees in 12 equal monthly payments with a 10% late fee for late payments.

25. Saitowitz missed the first payment due under the LOU on August 20, 2021. Libov never made the payments he agreed to in paragraph 24(e) above and Saitowitz never paid all the payments.

26. The Operating Agreement for the LLC became effective on August 7, 2021. A copy of Operating Agreement is attached as **Exhibit C**. The Operating Agreement provides among other things as follows:

a. The LLC would be manager-managed, and there would be two managers, Libov and Saitowitz. Sec 6.1

b. The Manager shall not be liable to the Company or any Member (a) for mistakes of judgment, for other acts or omissions, or for losses or liabilities due to such mistakes or other acts or omissions, provided in each case its actions did not amount to willful misconduct or gross negligence and it acted in good faith and in a manner it reasonably believed to be in, or not

opposed to, the best interests of the Company, or (b) due to the negligence, dishonesty or bad faith of any agent, employee or independent contractor retained or engaged to provide services, provided that reasonable care was exercised in selecting, employing, supervising or appointing such person.

Sec. 6.7

27. The Lees became the Investor Members of the LLC, and Libov and Saitowitz had complete responsibility for the management of the LLC and the construction project.

28. Libov and Saitowitz retained Defendant Arcon Construction Corporation—Defendant Libov's company—as the general contractor for the project. Demolition of the building began in November 2021 and construction commenced after that.

29. Since 2016, when the parties first agreed to form the LLC, the Lees spent a great deal of time chasing after Libov and Saitowitz to make the payments due to the Lees under the LOU and to pay their share of the property tax on the Property.

30. Libov and Saitowitz had limited communication with the Lees after construction commenced and failed to meet their obligations to keep the Lees informed on the progress of construction under the terms of the Operating Agreement, the Amendment, or the LOU. By way of example, Libov failed to comply with the requirement in paragraph 15 of the Amendment to hold monthly membership meetings to discuss the status of the project and construction. He also failed to provide the Lees with monthly reports on the project.

31. On or about January 17, 2023, the Lees met with Libov and learned for the first time that the construction loan was in default. They subsequently learned that Libov and Saitowitz had grossly, recklessly, and negligently mismanaged the construction project by among other things:

32. Libov and Saitowitz subsequently continued to grossly, recklessly, and/or negligently mismanage the LLC, leading eventually to a trustee's sale on or about April 4, 2024, by which Banner Bank acquired the Property. Their mismanagement included but is not limited to:

a. Failing to adequately and appropriately respond to Banner Bank's requests

6

for information to satisfy the delinquency.

    b.    Failing to adequately and appropriately obtain a new lender.

    c.    Placing their own interests above the interests of the Lees and the LLC by refusing to offer adequate collateral for a new loan.

    d.    Placing the project in a position that led to the filing of mechanics' liens.

33.    Banner Bank has initiated breach of guaranty litigation against Plaintiffs, Libov, Saitowitz, and Arcon in the Superior Court of the State of California, County of Sonoma (*Banner Bank v. Libov et al.*, Sonoma County Superior Court case no. 24CV02484). As a direct result of Libov's and Saitowitz's tortious conduct, Plaintiffs have incurred and continue to incur attorney's fees and other related costs to defend themselves in that litigation.

34.    In addition to the actions of Libov and Saitowitz, Plaintiffs are informed and believe, and thereon allege that Defendant Arcon, by and through Defendant Libov, took actions or failed to take actions that led to the failure of the project, including but not limited to delays in obtaining permits, failing to comply with building codes, and failing to comply with and meet the expected standard of care and skill in performing in its contractual duties.

35.    Further, Plaintiffs are informed and believe and thereon allege that Defendant Natoma, by and through Defendant Saitowitz, took actions or failed to take actions that led to the failure of the project, including but not limited to providing inadequate and inaccurate designs, failing to comply with applicable codes and laws, and failing to perform its services in accordance with the contractual standard of care.

36.    These actions fell below the standard of care owed by Arcon to the Lees.

37.    As a direct and proximate result of the Defendants' actions, the Lees have suffered and continue to suffer special and economic damages including but not limited to their economic interest in the Property, payments that were due to them under the terms of their LOU, and other consequential damages.

38.    As a direct and proximate result of Defendants' actions, the Lees have suffered and continue to suffer tremendous emotional distress from the financial hardship Defendants put them through, including anxiousness, sleepless nights, anguish, stress, and other emotional

Ad Astra Law Group, LLP

hardship.

**FIRST CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**(Against Defendants Libov and Saitowitz)**

39. Plaintiff incorporates by reference paragraphs 1 through 37, inclusive, and makes them a part of this cause of action as though fully set forth herein.

40. The Lees and the Defendants Libov and Saitowitz entered into a contract, as embodied in the Amended Agreement and LOU.

41. The Lees did all of the significant things that the contract required them to do.

42. The Defendants Libov and Saitowitz breached the contract by failing to make the payments required therein.

43. The Lees suffered financial losses because of the Defendants Libov and Saitwoitz's breach.

**SECOND CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Defendants Libov and Saitowitz)**

44. Plaintiff incorporates by reference paragraphs 1 through 42, inclusive, and makes them a part of this cause of action as though fully set forth herein.

45. As managers of the LLC, the Defendants Libov and Saitowitz owed fiduciary duties to the Lees including but not limited to the duty of loyalty and the duty of care.

46. The Defendants Libov and Saitowitz's duty of loyalty required them to "account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the member in the conduct … of the activities of a limited liability company or derived from a use by the member of a limited liability company property." Cal. Corp. Code section 17704.09(b)(1).

47. The Defendants Libov and Saitowitz's duty of care required them to refrain from engaging in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law." Cal. Corp. Code section 17704.09(c).

Case 2:24-bk-06699 Claim 1-1 Filed 03/13/25 Entered 03/13/25 Entered 03/13/25 16:54:20 Page 19 of 4 23

CASE NO.:

Ad Astra Law Group, LLP

48.   The Defendants Libov and Saitowitz are required to discharge these duties "consistent with the obligation of good faith and fair dealing." Cal. Corp. Code section 17704.09(d).

49.   Defendants Libov and Saitowitz breached their fiduciary duties by:

    a.   Failing to understand and take appropriate actions to ameliorate excess groundwater seepage beginning in January 2022.

    b.   Failing to create an appropriate plan of action based on the geotechnical report.

    c.   Failing to provide adequate resources to keep the project on schedule.

    d.   Distributing funds to themselves and/or their associated business entities that should not have been distributed.

    e.   Making distributions of construction loan funds for their benefit and to the disbenefit of the Lees.

    f.   Failing to adequately and appropriately respond to Banner Bank's requests for information to satisfy the delinquency.

    g.   Failing to adequately and appropriately obtain a new lender.

    h.   Placing their own interests above the interests of the Lees and the LLC by refusing to offer adequate collateral for a new loan.

    i.   Placing the project in a position that led to the filing of mechanics' liens.

50.   As a direct and proximate result of the Defendants Libov and Saitowitz's actions, the Lees have suffered and continue to suffer special and economic damages including but not limited to their economic interest in the Property, payments that were due to them under the terms of their LOU, attorney's fees and costs incurred in pending litigation against Banner Bank and other consequential damages.

51.   As a direct and proximate result of Defendants Libov and Saitowitz's actions, the Lees have suffered and continue to suffer tremendous emotional distress from the financial hardship Defendants Libov and Saitowitz put them through, including anxiousness, sleepless nights, anguish, stress, and other emotional hardship.

Case 2:24-cv-00699 ... Document 109 ... Filed 03/13/25 ... Entered 03/13/25 ... Page 20 of 23
CASE NO.:

Ad Astra Law Group, LLP

## THIRD CAUSE OF ACTION

## NEGLIGENCE

### (Against Defendant Arcon)

52. Plaintiff incorporates by reference paragraphs 1 through 51, inclusive, and makes them a part of this cause of action as though fully set forth herein.

53. Defendant Arcon owed the Lees, as third-party beneficiaries of the contract between Arcon and the LLC, a duty to perform the work on the project in the with the same skill and care that a reasonable general contractor would have used in similar circumstances.

54. Defendant Arcon breached the standard of care they owed to the Lees.

55. As a direct and proximate result of Arcon's breach the Lees were harmed.

56. As a direct and proximate result of the Defendant Arcon's actions, the Lees have suffered and continue to suffer special and economic damages including but not limited to their economic interest in the Property and other consequential damages, as well as attorney's fees and costs incurred in pending litigation against Banner Bank.

57. As a direct and proximate result of Defendant Arcon's actions, the Lees have suffered and continue to suffer tremendous emotional distress from the financial hardship Defendant Arcon put them through, including anxiousness, sleepless nights, anguish, stress, and other emotional hardship.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

### (Against Defendant Natoma)

58. Plaintiff incorporates by reference paragraphs 1 through 57, inclusive, and makes them a part of this cause of action as though fully set forth herein.

59. Defendant Natoma owed the Lees, as third-party beneficiaries of the contract between Natoma and the LLC, a duty to perform the work on the project in the with the same skill and care that reasonable architecture or design professionals would have used in similar circumstances.

60. Defendant Natoma breached the standard of care they owed to the Lees.

Case 2:24-cv-00699 Document 109 Filed 03/13/25 Entered 03/13/25 16:45:20 Page 22 of 23
CASE NO.:

61. As a direct and proximate result of Natoma's breach the Lees were harmed.

62. As a direct and proximate result of the Natoma's actions, the Lees have suffered and continue to suffer special and economic damages including but not limited to their economic interest in the Property and other consequential damages, as well as attorney's fees and costs incurred in pending litigation against Banner Bank.

63. As a direct and proximate result of Natoma's actions, the Lees have suffered and continue to suffer tremendous emotional distress from the financial hardship Defendant Natoma put them through, including anxiousness, sleepless nights, anguish, stress, and other emotional hardship.

## PRAYER FOR RELIEF

**WHEREAS** Plaintiffs pray for relief as follows:

1. For general and special damages according to proof;

2. For attorneys' fees and costs according to proof;

3. For defendants to provide an accounting

4. For interest as allowed by law; and

5. For such further relief as the court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues for which they are entitled to a trial by jury.

Dated: September 6, 2024                    **AD ASTRA LAW GROUP, LLP**

By_____
     Geoffrey Murry
     Attorneys for Plaintiffs
     Andy Lee and Shirley Lee

11

# PROJECT BUDGET & LOAN REQUEST ANALYSIS

**(Louis Bonfiglio)**

| | |
|---|---|
| Developer: | 255 Shipley Street, LLC |
| Project Name: | 255 Shipley Street, LLC |
| Project Type: | 24 Unit Condominium |

| | | Units: | | Lots | One | |
|---|---|---|---|---|---|---|
| Square Ftg: | 37,830 S.F. | | | 24 Acres | 0.224 | |

| USES: | BUDGET TOTAL $ | COST / SF | COST /Unit | % COSTS | BANK LOAN | $$$ TO BE CONTRIBUTED | BORROWER EQUITY (2) |
|---|---|---|---|---|---|---|---|
| **LAND & IMPROVEMENTS:** | | | | | | | |
| **Site Valuation** | | | | | $ - | | $ - |
| Site Valuation as Entitled | $ 6,500,000 | $171.82 | $270,833 | 30.0% | $ 200,000 | $ 1,500,000 | $ 4,800,000 |
| Site Demolition | $ - | $0.00 | $0 | 0.0% | $ - | | $ - |
| Grading following demolition | $ - | $0.00 | $0 | 0.0% | $ - | $ - | $ - |
| **TOTAL LAND & IMPROVEMENTS** | $ 6,500,000 | $171.82 | $270,833 | 30.0% | $ 200,000 | $ 1,500,000 | $ 4,800,000 |
| | | | | | | | |
| **CONSTRUCTION:** | | | | | | | |
| General Conditions | | $0.00 | $0 | 0.0% | $ - | | $ - |
| Direct Hard Construction Costs | $ 10,025,958 | $265.03 | $417,748 | 46.3% | $ 10,025,958 | $ - | |
| Builders Overhead and Profit | $ 1,020,835 | $26.98 | $42,535 | 4.7% | $ 1,020,835 | $ - | |
| Site and Infrastructure work | $ - | $0.00 | $0 | 0.0% | $ - | $ - | |
| **TOTAL CONSTRUCTION** | $ 11,046,793 | $ 292.01 | $ 460,283 | 51.0% | $11,046,793 | $ - | $ - |
| | | | | | | | |
| **CONTINGENCY AND INTEREST RESERVE:** | | | | | | | |
| Hard Cost Contingency | 5.00% | $ 501,298 | $13.25 | $20,887 | 2.3% | $ 501,298 | $ - |
| Interest Reserve (1) | | $ 1,117,200 | $29.53 | $46,550 | 5.2% | $ 1,117,200 | $ - |
| **TOTAL CONTINGENCY AND INTEREST RES.** | $ 1,618,498 | $ 42.78 | $ 67,437 | 7.5% | $ 1,618,498 | $ - | $ - |

*Note: the Hard Cost Contingency row has the 5.00% value before the columns; see below for reconstructed layout.*

| SOFT COSTS: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Construction Consultants | | | | | | | |
| Architectural | $ 493,087 | $13.03 | $20,545 | 2.3% | $ 493,087 | | $ - |
| Consultants | $ 9,600 | $0.25 | $400 | 0.0% | $ - | | $ 9,600 |
| Structural Engineer | $ 70,000 | $1.85 | $2,917 | 0.3% | $ 49,000 | $ - | $ 21,000 |
| Civil / Soils Engineer | $ 26,500 | $0.70 | $1,104 | 0.1% | $ - | $ - | $ 26,500 |
| Accoustical/ MEP / Fire/Sprinkler / Title 24 | $ 38,000 | $1.00 | $1,583 | 0.2% | $ 23,350 | $ - | $ 14,650 |
| Waterproofing | $ 75,000 | $1.98 | $3,125 | 0.3% | $ 75,000 | $ - | |
| Landscape Architect | | $0.00 | $0 | 0.0% | $ - | $ - | |
| Other Consultants | $ 4,900 | $0.13 | $204 | 0.0% | $ 2,974 | $ - | $ 1,926 |
| Environmental Reports and EIR Consultants | $ 13,500 | $0.36 | $563 | 0.1% | $ 10,850 | | $ 2,650 |
| Reimbursables & Miscellaneous | | $0.00 | $0 | 0.0% | $ - | | |
| Legal / Accounting /Administration | $ 50,000 | $1.32 | $2,083 | 0.2% | $ 46,692 | | $ 3,308 |
| **TOTAL CONSULTANTS** | $ 780,587 | $ 20.63 | $ 32,524 | 3.6% | $ 700,953 | $ - | $ 79,634 |
| | | | | | | | |
| **INDIRECT COSTS:** | | | | | | | |
| Carry Costs-Acquisition & Soft Costs To Date | $ - | $0.00 | $0 | 0.0% | $ - | | $ - |
| City Fees & Permits | $ 757,555 | $20.03 | $31,565 | 3.5% | $ 666,777 | $ - | $ 90,778 |
| DRE Subdivision Application and Legal | $ 45,000 | $1.19 | $1,875 | 0.2% | $ 45,000 | | $ - |
| SF WATER & PGE Utility Fees | $ 209,000 | $5.52 | $8,708 | 1.0% | $ 205,350 | | $ 3,650 |
| Environmental Reports | | $0.00 | $0 | 0.0% | $ - | | $ - |
| Quality Build Policy (included above) | | $0.00 | $0 | 0.0% | $ - | | $ - |
| OCIP and Builders Risk Insurance | $ 245,000 | $6.48 | $10,208 | 1.1% | $ 245,000 | $ - | $ - |
| Lender PreConstruction & Inspections | $ 15,000 | $0.40 | $625 | 0.1% | $ 15,000 | | $ - |
| Soft Cost Contingency | 0.0% | $ - | $0.00 | $0 | 0.0% | $ - | $ - |
| Bonding for City offsite work | | $0.00 | $0 | 0.0% | $ - | | $ - |
| Marketing/Models/Staging | $ - | $0.00 | $0 | 0.0% | $ - | | $ - |
| **TOTAL INDIRECT COSTS:** | $ 1,271,555 | $ 33.61 | $ 52,981 | 5.9% | $ 1,177,127 | $ - | $ 94,428 |
| | | | | | | | |
| **FINANCING AND CLOSING COSTS:** | | | | | | | |
| Construction lender and Broker fee | $ 304,000 | $8.04 | $12,667 | 1.4% | $ 304,000 | | $ - |
| Title, Escrow and Closing Costs | $ 42,500 | $1.12 | $1,771 | 0.2% | $ 42,500 | $ - | $ - |
| Appraisal, Environmental & Review | $ 7,500 | $0.20 | $313 | 0.0% | $ 7,500 | $ - | $ - |
| All Taxes and Related Expenses | $ 72,000 | $1.90 | $3,000 | 0.3% | $ 72,000 | $ - | $ - |
| **TOTAL FINANCE & CLOSING** | $ 426,000 | $ 11.26 | $ 17,750 | 2.0% | $ 426,000 | $ - | $ - |
| | | | | | | | |
| **TOTAL PROJECT COSTS** | $ 21,643,433 | $ 572 | $ 901,810 | 100.0% | $15,169,371 | $ 1,500,000 | $ 4,974,062 |

| SOURCES: | TOTAL $ | COST / SF | COST /UNIT | % COSTS |
|---|---|---|---|---|
| **BORROWER'S EQUITY** | $ 6,474,062 | $171.14 | $269,753 | 30% |
| **CONSTRUCTION LOAN** | $ 15,169,371 | $400.99 | $632,057 | 70% |
| **TOTAL PROJECT COST** | $ 21,643,433 | $572.12 | $901,810 | 100% |

**FOOTNOTES:**

---

**Valuation/Profitability**

Date Prepared: 02/03/21

| Unit Type | Quantity | Total SqFt | Sales $ Per SF | Sales Price Per SF | Total Sales $$ | Loan to Value |
|---|---|---|---|---|---|---|
| Market Rate | 21 | 21,490 | 1,287,751 | $ 1,258.39 | $ 27,042,776 | |
| Below Market Rate Units | 3 | 1,950 | 315,000 | $ 484.62 | $ 945,000 | |
| Parking Spaces | 6 | | $ 80,000 | | $ 480,000 | |
| Ground Floor Commercial Space (1) | 1 | 4,365 | | $ 458.19 | $ 2,000,000 | |
| | | | | Gross Sales | $ 30,467,776 | 50% |

(1). The commercial space will be held and leased at $11,000 per month NNN and has an estimated value of $2,000,000

| | | |
|---|---|---|
| Less: | Construction Loan | (15,169,371) |
| Less: | Costs of Sale | (1,948,067) |
| | Gross Profit | $ 13,350,339 |

**Sales Exp** (excluding the Commercial Space)
6.00%

(2) Building Owner Member has approximately $600,000

In cash for the acquisition and in principal amortization on the loan.

| | | |
|---|---|---|
| Less: | Borrower's Equity | (6,474,062) |
| | Net Profit | $ 6,876,277 |
| | ROE | 106% |
| | ROC | 32% |