Sheila Gropper Nelson, SBN 85031
Resolution Law Firm P. C.
50 Osgood Place 5th Fl.
San Francisco CA 94133
415-362-2221
Email: shedoesbklaw@aol.com
Attorney for Arcon Construction
Corporation, Debtor & Debtor-in
-possession

United States Bankruptcy Court
Northern District of California

In re:                                          Case No. 24-30679
                                                          Chapter 11

Arcon Construction
Corporation
_____/

[PROPOSED] COMBINED PLAN OF REORGANIZATION
AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT
(September 19, 2025)


## Part 1. DISCLOSURE STATEMENT:

### INTRODUCTION

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The purpose of this Disclosure Statement is to provide information sufficient for You to make an informed decision on whether to vote to accept or reject the Plan.

This Disclosure Statement is subject to the approval of the Bankruptcy Court.

The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

It contains how the Plan will be funded. Part 1 contains this overview. Article I provides background and general information. Article II is a summary of the Plan of Reorganization. Article III identifies the Claims Classifications and Treatment. Article IV are General Provisions.

Payment to general unsecured creditors are identified at not less than 22.1% and not greater than 25% of allowed claims, likely to result in an aggregate recovery of 23.55% of allowed claims. It identifies how payments will be paid ranging over specific periods of time and when payments for each class will start.

This proposed joint disclosure statement and plan identify how taxes and other priority claims will be paid in full, as shown in Part 3, or pursuant to an agreement with each identified holder of tax or priority claims.

Exhibits are provided that set out background information, analysis of how much creditors would likely receive if the plan is not confirmed and the debtor is subject to a Chapter 7 liquidation, and an analysis of the Debtor's monthly projected income and expenses and other source of value to fund the plan of reorganization. All of that is intended to assist in the evaluation of whether to vote for the plan of reorganization.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read all of this, including the Plan, carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.

If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts, with certain exceptions, if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Article IV.

The Plan cannot be confirmed unless the court finds it feasible. A Plan is feasible if confirmation of the Plan is not likely to be followed by Debtor's liquidation or need for further financial reorganization, unless such liquidation or reorganization is proposed in the Plan (§ 1129(a) (11)). The Plan proponent believes it is feasible because, both on the Effective Date and for the duration of the Plan, the proponent estimates that Debtor will have sufficient cash to make all distributions. Projected revenues, expenses, and proposed payments to creditors during the Plan Term are specified in this joint disclosure statement and plan of reorganization.

Most creditors, those in impaired classes, are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than __TBD by the Court_____. The court will hold a hearing on confirmation of the Plan on __TBD____ at __TBD _____.

## Article I. BACKGROUND AND GENERAL INFORMATION:

1.01. General description of the business
Arcon Construction Corporation, (hereafter Arcon), the Debtor is a closely held corporation

Case: 24-30679   Doc# 207   Filed: 09/19/25   Entered: 09/19/25 19:06:53   Page 2 of 24

started in 1999 by Vladimir Libov. Since 1999 the Debtor, a single shareholder corporation, has been in the business of General Construction specializing in the construction of multi-family buildings and high end single-family homes throughout the San Francisco Bay Area.

Andrey Libov, one of Vladimir's children, has acted as COO of the Company for the past 6 years. He is the designated responsible party in the instant matter. He is familiar with both the business and the construction industry as it relates to Arcon and the San Francisco Bay Area.

1.02     Events Leading to the Filing of the Voluntary Petition: Arcon as a general contractor, like others in that industry, is subject to multiple factors not the least of which can be disgruntled property owners, sub-contractors, shifting demands from the city and county building departments throughout the area, and the impact of market rates and limitations. Each of those can and have influenced Arcon's revenue, completion schedules, and exposure to both actual and threatened litigation.

Though each variable always existed each was exasperated by the onset of the Covid-19 pandemic. All of the variables can be outside of Arcon's control. Those identified variables, together with the residual impact of Covid-19 pandemic, were significant factors that influenced Arcon's determination to seek reorganization through the Chapter 11 process so as to be able to continue to do business in the Bay Area. Arcon has ongoing relationships with suppliers and subcontractors as well as employees and the community at large.

Arcon is prepared to continue to be an active and contributing member of the bay area construction community capable of bridging the gap between modest single unit residential building and complex multiunit buildings, consistent with the work it has historically performed for more than 25 years.  Its reorganization is intended to benefit both Debtor-in-possession and its community at large.

1.03     Events Occurring During the Pendency of the Bankruptcy:  Because of conduct by others Arcon encountered ongoing litigious events requiring involvement through to the mid-summer after it filed its voluntary petition on September 13, 2024.

A significant portion of that time was required as the result of the refusal of its prior state court attorney to file the substitution of counsel form he demanded from Arcon.

In addition to that conduct Arcon undertook to reasonably defend an award of attorney's fees and costs relative to a prior litigation matter. Arcon was able to reduce the fees and costs modestly and the claim, previously subject to determination, is now final.

1.04     Management: Management will remain with both the sole shareholder who will be contributing new value to help to fund the Plan of Reorganization and the COO who holds no ownership interest in the company.

As a further result of the voluntary petition and the lessons learned Arcon has re-evaluated the language in its underlying contracts and the need for new and different forms of

Chapter 11 Combined
Plan & Disclosure Statement

business insurance to guard against future difficulties.

That re-evaluation process allows Arcon to continue to do business with its experienced staff and sole owner.

## ARTICLE II SUMMARY OF THE PLAN OF REORGANIZATION:

1.01    This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay claims against Arcon Construction Corporation (the "Debtor") from cash in the Debtor-in-possession account, disposable funds over the course of the proposed plan period of 60 months and from New Value of $100,000.00 contributed by the sole shareholder of Debtor.

1.02    Debtor projects that the total of those funds will provide a distribution for the benefit of undisputed general unsecured creditors equaling $614,895 following confirmation of the plan.

1.03    The Plan provides for secured and unsecured priority claims, three subclasses of general unsecured claims, and one class of the equity holder.

1.04    The treatment of administrative expense claims, U.S. Trustee's fees, and priority tax claims is set forth in Article III, below.

1.05    General Unsecured creditors, not identified in specific sub-classes who hold allowed claims will receive distributions under the Plan equaling not less than 22.1% of their total claims paid over a 60 month period of time; general unsecured trade creditors will receive the same percentage of distribution except over a shorten period of time; and designated general unsecured small class creditors will receive slightly more on the effective date.

1.06    Who may vote: Creditors are entitled to vote on confirmation of the Plan unless (i) their class is unimpaired (presumed to accept) or is to receive no distribution (presumed to reject); (ii) an objection has been filed to that creditor's claim, (iii) that creditor's claim is scheduled by Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim; or (iv) the claim is unclassified (and thus required by law to be paid in full). A creditor whose claim has either been objected to or been scheduled by Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim, and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard at or before the hearing on confirmation of the Plan (the "Confirmation Hearing").

1.07    How to vote: Fill out and return the attached ballot so that Debtor's counsel receives it no later than 14 days before the Confirmation Hearing.

1.08    Effect of vote: The Plan will be confirmed only if (i) it is accepted by each impaired class, or (ii) it is accepted by at least one impaired class (exclusive of insiders) and the Court

Case: 24-30679    Doc# 207    Filed: 09/19/25    Entered: 09/19/25 19:06:53    Page 4 of 24

determines that it is "fair and equitable" (as defined by 11 U.S.C. § 1129(b)) to all dissenting classes of creditors. A class of creditors accepts the Plan if it is accepted by a majority in number and two-thirds in dollar amount of creditors who cast ballots.

1.09    Debtor shall pay the holders of allowed claims provided for under the Plan by the use of the cash on hand of the Debtor in possession account, and the disposable income from the proceeds, product, offspring, rents, or profits of all legal or equitable interests of the Debtor and its post confirmation business; and from a new value contribution of $100,000.00 by the single shareholder of the Debtor.

## ARTICLE III: CLASSIFICATION & TREATMENT OF CLAIMS

### Part 1: TREATMENT OF SECURED NON-PRIORITY CREDITORS

#### Property to be Surrendered

Debtor will surrender the following collateral on the Effective Date of the Plan. The confirmation order will constitute an order for relief from stay. Any secured claim is satisfied in full through surrender of the collateral. Any deficiency claim is a general unsecured claim treated in Part 2. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
| 1A    | NONE             |                           |

#### Creditor's Rights Remain Unchanged.

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the following collateral. The confirmation order will constitute an order for relief from stay. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Description of Collateral | Monthly payment |
|-------|------------------|---------------------------|-----------------|
| 1B    | Mercedes-Benz Fin. Srv LLC USA | Auto $20,916.24 | $575.57 |

#### Debtor to Make Regular Payments and Pay Arrears Over Time.

Debtor will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears, with interest in accordance with the agreement for each creditor, in designated equal monthly payments. To the

Case: 24-30679    Doc# 207    Filed: 09/19/25    Entered: 09/19/25 19:06:53    Page 5 of 24

extent arrears are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

| Class | Name of Creditor | Amount of Claim | Monthly Payment |
|---|---|---|---|
| Class 1C – Secured [incorporating the language required by The creditor] | U.S. Small Business Administration | $133,611.20 | $1,000.00 |

**Debtor to Strip Lien to Value of Collateral and Pay Over Time.**

Debtor contends that the value of the collateral is less than the amount of the claim. Before confirmation, Debtor will obtain an order from the court determining the value of the collateral. Debtor will pay as a secured claim the amount equal to the value of the collateral. Debtor will pay the secured claim in full with interest from the Effective Date of the Plan through [number] equal monthly payments. Payments will be due on the [number] day of the month, starting [n/a]. Any remaining amount due is a general unsecured claim treated in Part 2.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan defined in Part 6(b)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Collateral | Value | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|
| n/a | NONE | | | | |

**Debtor to Strip Off Lien.**

Prior to confirmation, Debtor will obtain an order(s) or stipulation(s) fixing the secured amount of the following creditors' claims at zero. Debtor will pay nothing to those creditors as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured claim treated in Part 2.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. These secured claims are impaired and are entitled to vote on confirmation of the Plan.

| Name of Creditor | Collateral | Value |
| --- | --- | --- |
| NONE | | |

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

Debtor will pay the entire amount contractually due with interest through [number] equal monthly payments, due the [number] day of the month, starting [month & year].

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
| --- | --- | --- | --- | --- | --- | --- |
| n/a | NONE | | | | | |

**Property to be Sold.**

Debtor will sell the following collateral by [month and year], paying secured creditors from the proceeds of the sale. Debtor will file a motion for approval of any such sale on 28 days notice to lien holders. Unless the court orders otherwise, a lienholder whose lien is not in bona fide dispute may credit bid the amount of its lien at the sale. Any deficiency claim is a general unsecured claim treated in Part 2.

Debtor will make the following monthly payments pending the closing of the sale, due the [number] day of the month, starting [month & year].

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|-------|------------------|------------|---------------------|-----------------|
| n/a | NONE | | | |

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). These secured claims are impaired and are entitled to vote on confirmation of the Plan.

## PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS

### Class 2(a). Small Claims.

This class includes any creditor whose allowed claim is **$ 10,000.00** or less, and any creditor in Class 2(b) whose allowed claim is larger than $10,000.00 but agrees to reduce its claim to $10,000.00 as allowed by 11 U.S.C. Section 1122(b). Each creditor will receive on the Effective Date of the Plan a single payment equal to 22.1% of the lesser of its allowed claim or $10,000.00. For ease of administration all small claim recipients, or those electing to be treated in the small claim class, will be paid a onetime payment on the Effective Date.

It is estimated that these small creditors would receive approximately 1.58%, or less, of their allowed claims in a Chapter 7 liquidation.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b). **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|------------------|-----------------|-------------------|
| CG APPLIANCE | $5,745.00 | $1,269.65 |
| Frontier Pacific | $2,644.10 | $584.35 |
| Tenderloin Neighborhood | $4,556.27 | $1,006.94 |
| L&W Supply | $4,360.05 | $963.57 |
| Wells Fargo Bank N.A. | $6,357.32 | $1,404.97 |

Case: 24-30679    Doc# 207    Filed: 09/19/25    Entered: 09/19/25 19:06:53    Page 8 of 24

**Class 2(b). Trade Creditors with General Unsecured Claims.**

Allowed claims of pre-petition general unsecured trade creditors, whom Debtor-in-possession will continue to use for post-petition trade services and supplies, and that are not treated as small claims, shall be paid as follows:

**Percent Plan.** Trade Creditors will receive **25%** percent of their allowed claim in **24** equal monthly installments starting in **60 days from the Effective Date but not later than December 1, 2025** and to be paid thereafter on the **15th** day of each month for the balance of 23 additional months.

It is estimated that these trade creditors would receive approximately 1.58%, or less, of their allowed claims in a Chapter 7 liquidation.

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| INM DRYWALL | $10,496.26 | N | $2,624.06 | $109.34 |
| Master Roofing | $36,590.00 | N | $9,147.50 | $381.15 |
| South City Lumber | $201,132.00 | N | $50,283.00 | $2,095.13 |
| Crime Watch Security | $23,392.30 | N | $7,348.08 | $306.17 |
| United Site Services | $11,160.97 | N | $2,790.25 | $116.26 |
| West Coast Installation | $11,019.70 | N | $2,754.93 | $114.79 |
| A & V Drywall | $39,400.00 | N | $9850.00 | $410.42 |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated whether a particular claim is disputed.

**Class 2(c). [Other] General Unsecured Claims.**

Allowed claims of general unsecured creditors not treated as small or trade claims, in Class 2[a] & 2[b] above, shall be paid as follows:

**Percent Plan.** Creditors will be impaired and will receive a set percentage distribution over 60 months after the Effective Date due monthly. Monthly payments will occur on the 15th of each consecutive month. Creditors in this class would receive less than 1.58% in a Chapter 7

Case: 24-30679   Doc# 207   Filed: 09/19/25   Entered: 09/19/25 19:06:53   Page 9 of 24

liquidation analysis.

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| 653 28th Street LLC | $1,544,626.61 | N | $341,362.55 | $5,689.38 |
| Christopher M. Hunt | $225,253.08 | N | $49,780.93 | $829.68 |
| Law Office of George W. Wolff | $254,188.89 | N | $56,175.75 | $936.26 |
| Newity LLC | $80,351.00 | N | $17,757.57 | $295.95 |
| Schindler Elevator | $25,529.80 | N | $5,642.08 | $94.03 |
| De Hahn & Associates | $13,791.00 | N | $3,047.81 | $50.80 |
| J.P. Morgan Chase | $89.093.21 | N | $19,689.60 | $328.16 |
| American Express | $68,124.69 | N | $15,055.56 | $250.93 |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated whether a particular claim is disputed.

**Class 2(c) (1). Disputed General Unsecured Claims.**

Disputed claims of general unsecured creditors are identified in this table. Treatment of Disputed Claims is more fully identified below in Article IV, 1.03(b).

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Nick Meja Painting | $130,610.00 | Y | 0.00 | 0.00 |
| Andy & Shirley Lee | $9,912,020.20 | Y | 0.00 | 0.00 |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b)). Until each claim becomes a non-appealable allowed claim it is not automatically entitled to vote on the confirmation of the Plan. Debtor has indicated that these claims are disputed as identified above in Article II paragraph

1.06.

## PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS

(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Sub Chapter V Trustee Hayes | $19,544.76 (inclusive of costs) |

The following professionals have agreed to accept payment over time as follows. Payments will be made as agreed between Debtor and Professional, starting in February, 2026 or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| Resolution Law Firm P. C. | TBD | TBD | TBD |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) <u>Other Administrative Claims</u>. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable. If any such creditors exist they are not listed below. All fees payable to the United States Trustee, as of confirmation, will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| n/a | |

(c) <u>Tax Claims</u>. Debtor will pay allowed tax claims entitled to priority under section 507(a)(8), as agreed with the identified creditor(s), in full over time with interest at the non-bankruptcy statutory interest rate in equal payments in accordance with section 511 of the Bankruptcy Code.

Chapter 11 Combined
Plan & Disclosure Statement

Case: 24-30679   Doc# 207   Filed: 09/19/25   Entered: 09/19/25 19:06:53   Page 11 of 24

Payments will be made monthly as agreed between the Debtor and taxing agency. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan defined in Part 6(b). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | Secured $110,743.50 & Unsecured 208,919.67 = $319,663.17 [1] | Varied | $6,000.00 | Monthly |
| Franchise Tax Board | $926.44 | Varied | $946.44 | once |

## PART 4: Treatment of EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Executory Contracts/Unexpired Leases Assumed. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears, if any, will be paid in full in 24 equal monthly installments beginning on the first day of December 1, 2025.

| Name | Description | All Monthly |
|---|---|---|
| Regent West Limited, LP | Office Rent | $3,187.00 |
| Lexus Financial Services | Car Lease | $1,572.84 |
| Bank of America | Purchase | $1,500.00 |
| Google | Subscription | $368.00 |
| Fieldwire | Software | $270.00 |
| Buildertrend | Software | $770.64 |

---

[1] Debtor lists both portions of the IRS claim here as the agreed upon payment does not distinguish between the secured portion and the priority portion. Debtor can separate the claims if directed to do so.

Chapter 11 Combined
Plan & Disclosure Statement

–12–

| Intuit | Software | $458.22 |
| Reliable Premium Management | Workers Compensation | $4,666.35 |
| Fastrak | Toll service | $545.00 |
| Comcast | Internet | $245.00 |
| Verizon | Phone | $700.00 |
| Farmers | Auto Insurance | $3,000.00 |
| First Insurance | Liability Insurance | $4,811 |
| Adobe | Software | $53.97 |

(b) Executory Contracts/Unexpired Leases Rejected. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
| --- | --- |
| None | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed assumed.

**Part 5. Treatment of Equity Security Holders:**

Equity Interests: Class treatment. The legal, equitable, and contractual rights of the Equity Security Holder is unaltered by the Plan. The single holder in the Debtor shall retain his equitable interests in the property of the Debtor but will contribute new value of $100,000.00 to help in the Plan of Reorganization. The new value is the shareholder's personal funds, unrelated to the Debtor, and is being contributed to provide an immediate pool of funds for small & trade claims and costs of administration.

Impairment and Voting. The interests are not impaired by the Plan, and the holders of such interests are not entitled to accept or reject the Plan on account of such interests.

**ARTICLE IV.        GENERAL PROVISIONS:**

**1.01:   DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)   <u>Discharge</u>.   Debtor shall not receive a discharge of debts until Debtor makes all or substantially all payments due and the Plan is substantially consummated as may be determined by the court.

(b)  <u>Vesting of Property</u>.   On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to re-vesting upon conversion to Chapter 7 as provided in Part 6(e) below.

(c)  <u>Plan Creates New Obligations</u>.   Except as provided in Part 6(d), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.   Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.   To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**1.02:   REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  <u>Creditor Action Restrained</u>.   The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.   Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in default under the Plan, except as provided in Part 6(d) below.

(b)  <u>Material Default Defined</u>.   If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, the creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.   If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan.

(c)  <u>Remedies Upon Material Default</u>.   Upon Material Default, an affected creditor:(i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(d)  <u>Claims not Affected by Plan</u>.   Upon confirmation of the Plan, and subject to Part 5(c), any

Chapter 11 Combined
Plan & Disclosure Statement

Case: 24-30679    Doc# 207    Filed: 09/19/25    Entered: 09/19/25 19:06:53    Page 14 of 24

creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), and (c) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(e) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(f) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## 1.03: GENERAL PROVISIONS

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.

Debtor will create a reserve for disputed claims.
Delay of Distribution on a Disputed Claim. No distribution will be made on account of a "disputed claim" until such "disputed claim" is allowed by a final non-appealable order.

Two claims are currently identified by Debtor as disputed. A claim by Nick Meja Painting for $130,610.00. Debtor-in-possession will be bringing an objection to said claim before confirmation. If the claim objection is unsuccessful that disputed claim will be paid at the rate of 22.1% like all other general unsecured creditors over a period of 60 Months from the date of a final non-appealable determination of claim value.

The other claim, to which further objection will be filed, is for an unsupported derivative claim by Shirley and Andy Lee in the amount of $9,912,200.50. Debtor-in-possession has no known liability to the identified claimants; and the claim is wrongfully filed against the debtor-in-possession. Debtor-in-possession will generate a realistic reserve for payment in the event that of a final non-appealable claim in favor of Shriley and Andy Lee. Debtor-in-possession will

Case: 24-30679   Doc# 207   Filed: 09/19/25   Entered: 09/19/25 19:06:53   Page 15 of 24

allocate approximately $1,500.00 per month to that reserve through to the date of a final non-appealable determination of the disputed claim or its voluntary withdrawal by the Lees.

If a disputed claim becomes an allowed claim, Debtor shall begin distribution to the claimant from the reserve the above identified amounts using the same calculations identified for general unsecured creditors set out about and will pay the allowed non-appealable claim amount at the same percentage and number of months as if the claim had been allowed, to wit 60 months after final determination of an allowed claim without the need to modify the confirmed plan of reorganization.

Any funds no longer needed in reserve shall be returned to Debtor.

The Debtor shall retain the power to settle and compromise a disputed claim without court approval unless the disputed claimant requests a court determination in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(c) Cramdown. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) Governing Law. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) Lawsuits. Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Shirley & Andy Lee & their agents | N | Wrongful claim | TBD | TBD |

(g)  Notices.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Arcon Construction Corporation
333 Gellert Blvd.
Daly City CA 94015

Dated: 2025-09-19

_Andrey Libov_

By Andrey Libov
COO & Responsible Party

Sheila Gropper Nelson, SBN85031
Resolution Law Firm P. C.
50 Osgood Place, 5th Fl.

San Francisco CA 94133

Dated: _____, 2025

_____
Sheila Gropper Nelson

Chapter 11 Combined

Plan & Disclosure Statement

--

(g) Notices.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:


Arcon Construction Corporation
333 Gellert  Blvd.
Daly City CA 94015
Dated: _____, 2025

_____
By Andrey Libov
COO & Responsible Party

Sheila Gropper Nelson, SBN85031
Resolution Law Firm P. C.
50 Osgood Place, 5th Fl.
San Francisco CA 94133
Dated: _9-19, 2025
/s/Sheila Gropper Nelson
Sheila Gropper Nelson

**Attorney Certification**

I, Sheila Gropper Nelson, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is used a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on December 7, 2011 (the "Standard-Form Plan") except as modified.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

| | | |
|---|---|---|
| Part 2 | | General Unsecured Claims |
| | | Additional Class for Small Claims & Trade Claims & Disputed Claims |
| Part 5 | [a] | Discharge |
| Part 7 | [b] | Disputed Claims in its entirety |

I declare that the foregoing is true and correct. Executed this 19 day of September , 2025.

/s/Sheila Gropper Nelson
Attorney for Debtor(s)

Exhibit 1 - Events That Led To Bankruptcy:

A.    General description of the business

Arcon Construction Corporation, (hereafter Arcon), the Debtor is a closely held corporation started in 1999 by Vladimir Libov. Since 1999 the Debtor, a single shareholder corporation, has been in the business of General Construction specializing in the construction of multi-family buildings and high end single-family homes throughout the San Francisco Bay Area.

Andrey Libov, one of Vladimir's children, has acted as COO of the Company for the past 6 years.

He is the designated responsible party in the instant matter. He is familiar with both the business and the construction industry as it relates to Arcon and the San Francisco Bay Area.

Arcon as a general contractor, like others in that industry, is subject to multiple factors not the least of which can be disgruntled property owners, sub-contractors, shifting demands from the city and county building departments throughout the area, and the impact of market rates and limitations.

Each of those can and have influenced Arcon's revenue, completion schedules, and exposure to both actual and threatened litigation.

Though each variable always existed each was exasperated by the onset of the Covid-19 pandemic. All of the variables can be outside of Arcon's control. Those identified variables, together with the residual impact of Covid-19 pandemic, were significant factors that influenced Arcon's determination to seek reorganization through the Chapter 11 process so as to be able to continue to do business in the Bay Area.

Arcon has ongoing relationships with suppliers and

subcontractors as well as employees and the community at large.

Arcon is prepared to continue to be an active and contributing member of the bay area construction community capable of bridging the gap between modest single unit residential building and complex multiunit buildings, consistent with the work it has historically performed for more than 25 years. Its reorganization is intended to benefit both Debtor-in-possession and its community at large.

## Exhibit 2

Debtor's Revenue by year

| Year | Revenue |
|---|---|
| 2015 | $5,300,753 |
| 2016 | $5,710,800 |
| 2017 | $4,090,033 |
| 2018 | $5,535,029 |
| 2019 | $7,111,296 |
| 2020 | $5,996,982 |
| 2021 | $9,537,792 |
| 2022 | $5,646,737 |
| 2023 | $2,424,872 |
| 2024 | $10,159,873 |
| Total | $61,514,167 |
| Average for 10 years | $6,151,417 |

Exhibit 3

Five-Year Profit Forecast / Feasibility

| Category | Oct 2025 | Nov 2025 | Dec 2025 | 2025 4Q | 2026 Total | 2027 Total | 2028 Total | 2029 Total | 2030 9 month | Total for 5 years |
|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | $512,618 | $512,618 | $512,618 | $1,537,854 | $6,151,417 | $6,151,417 | $6,151,417 | $6,151,417 | $4,613,563 | $30,757,084 |
| Cost of Goods Sold | $417,784 | $417,784 | $417,784 | $1,253,351 | $5,013,405 | $5,013,405 | $5,013,405 | $5,013,405 | $3,760,053 | $25,067,023 |
| Operational Payments: | | | | | | | | | | |
| Payroll | $46,836 | $46,836 | $46,836 | $140,509 | $562,037 | $562,037 | $562,037 | $562,037 | $421,527 | $2,810,183 |
| Rent | $3,187 | $3,187 | $3,187 | $9,562 | $38,246 | $38,246 | $38,246 | $38,246 | $28,685 | $191,231 |
| Insurance | $12,478 | $12,478 | $12,478 | $37,433 | $149,731 | $149,731 | $149,731 | $149,731 | $112,298 | $748,655 |
| Tax preparation services | $0 | $3,095 | $0 | $3,095 | $4,145 | $4,145 | $4,145 | $4,145 | $4,145 | $23,820 |
| Telephone / Internet | $945 | $945 | $945 | $2,834 | $11,337 | $11,337 | $11,337 | $11,337 | $8,503 | $56,686 |
| Software (QuickBooks, Gmail, Thuildertrend, Fieldwire) | $1,920 | $1,920 | $1,920 | $5,761 | $23,045 | $23,045 | $23,045 | $23,045 | $17,284 | $115,226 |
| Auto Expenses (Gas, FasTrak) | $2,470 | $2,470 | $2,470 | $7,409 | $29,637 | $29,637 | $29,637 | $29,637 | $22,228 | $148,186 |
| Office Supplies / Materials | $150 | $150 | $150 | $450 | $1,800 | $1,800 | $1,800 | $1,800 | $1,350 | $9,000 |
| Daly City Business License | $513 | $513 | $513 | $1,538 | $6,151 | $6,151 | $6,151 | $6,151 | $4,614 | $30,757 |
| Automobile Expenses | $3,648 | $3,648 | $3,648 | $10,945 | $43,781 | $43,781 | $43,781 | $43,781 | $32,836 | $218,905 |
| Payments to IRS | $6,000 | $6,000 | $6,000 | $18,000 | $72,000 | $72,000 | $72,000 | $72,000 | $13,663 | $319,663 |
| SBA Loan Repayments | $1,000 | $1,000 | $1,000 | $3,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $63,000 |
| Franchise Tax Board | $926 | | | $926 | $800 | $800 | $800 | $800 | $800 | $4,926 |
| Subchapter V Trustee Fees | $326 | $326 | $326 | $977 | $3,909 | $3,909 | $3,909 | $3,909 | $2,932 | $19,545 |
| Chapter 11 Trustee Fees | $2,050 | $2,050 | $2,050 | $6,151 | $24,606 | $24,606 | $24,606 | $24,606 | $18,454 | $123,028 |
| Administrative Claims (Post-Confirmation) | $1,500 | $1,500 | $1,500 | $4,500 | $18,000 | $18,000 | $9,500 | $0 | $0 | $50,000 |
| IRS: Corporate income tax - current | | | | | $11,201 | $46,365 | $46,365 | $48,150 | $50,145 | $202,227 |
| California Income tax - current | | | | | $4,715 | $19,518 | $19,518 | $20,269 | $21,109 | $85,128 |
| Forecasted Disposable Income | $10,885 | $8,716 | $11,811 | $31,412 | $120,871 | $70,904 | $79,404 | $86,368 | $80,937 | $469,895 |

Chapter 11 Combined
Plan & Disclosure Statement

## Exhibit 4

Liquidation Analysis

| Description | Value (Per Operating Reports) | Recognizable Value |
|---|---|---|
| Cash | $270,828 | $270,828 |
| Accounts Receivables | $0 | $0 |
| Notes Receivables | $0 | $0 |
| Inventory | $3,000 | $3,000 |
| Work in Progress | $0 | $0 |
| Equipment | $5,500 | $5,500 |
| Leasehold Improvements | $0 | $0 |
| Furniture and Office Equipment | $2,000 | $2,000 |
| Other Personal Property | $18,000 | $18,000 |
| Secured Debt (UCC Filings) | | $ |
| Net Personal Property | $299,328 | $299,328 |

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | $0 |
| Recovery from Preferences and Fraudulent Conveyances | [ADD] | $0 |
| Chapter 7 Administrative Claims | [SUBTRACT] | $15,000 |
| Chapter 11 Administrative Claims | [SUBTRACT] | $69,545 |
| Priority Claims | [SUBTRACT] | $170,593 |
| Chapter 7 Trustee Fees (11 U.S.C. § 326) | [SUBTRACT] | $0 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $0 |
| Net Funds Available for Distribution to Unsecured Creditors | | $44,190 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $2,788,422.25 |
| Percent Distribution to Unsecured Creditors Under Plan | 22.1% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 1.58% |

Chapter 11
Combined Plan & Disclosure Statement

Case: 24-30679   Doc# 207   Filed: 09/19/25   Entered: 09/19/25 19:06:53   Page 24 of 24