Sheila Gropper Nelson, SBN 85031
Resolution Law Firm P. C.
50 Osgood Place, 5th Fl.
San Francisco CA 94133
Email: Shedoesbklaw@aol.com
415-362-2221
Attorneys for Arcon Construction Corporation
Debtor-in-possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>ARCON CONSTRUCTION CORPORATION,<br>Debtor. | Case No. 24-30679 DM 11<br><br>Chapter 11<br><br>Andrey Libov Declaration<br>ISO of response in opposition to 653 Motion<br>Judge: Hon. Dennis Montali<br>Date: January 29, 2026<br>Time: 9:30 a.m.<br>Ctrm: 17 (Via Tele/Videoconference) |

1. I, Andrey Libov, am the designated responsible party for Debtor, Arcon Construction Corporation, Debtor and Debtor-in-possession, (hereafter Arcon) in the above referenced matter.

2. I make this declaration based on my personal knowledge and review of company records and as the designated responsible party.

3. On September 13, 2024, Arcon filed a voluntary petition for relief under Subchapter V of Chapter 11. The designation was changed following 653 28th Street LLC's, (653), challenge in or about August, 2025 requiring a different plan format. There have been a few hiccups but Arcon looks forward to proposing a confirmable plan of reorganization and is working diligently to that end. It is my understanding that Ravi Sadarangani has directed all of the conduct of 653 throughout all of the subject litigation.

4. I sat for a 2004 examination conducted by 653 which was directed to me as the responsible party for Arcon. Arcon's attorney, Sheila Gropper Nelson, appeared at that examination as Arcon's

1.

attorney only. Mr. Sadarangani was presented during the examination and incorrectly identifies Ms. Gropper Nelson's appearance as counsel for Arcon. The subpoena was directed to me as the responsible party for Arcon. (RJN)

5. I attended the 2004 examination of my father, Vladimir Libov, as president and sole shareholder of Arcon that occurred in January, 2025 conducted by 653 and its different attorneys at that time. 653's attorneys were talking over others, including each other, and any confusion in the transcript of that exam was caused by English not being my father's first language and that conduct by 653.

6. 653's claim that Vladimir stated there is a "50/50 split" between himself and me is a lie and complete fabrication. The share certificate produced in conjunction with the January, 2025 2004 exam identifies Vladimir as the 100% sole owner of Arcon. (Attached as an Exhibit) Nothing has ever changed that ownership. There has never been a "split" of profits and none has ever been identified in the legal and tax filings because none ever happened. I hold no shares or ownership interests in Arcon. Only Vladimir holds that interest.

7. Arcon documents all of its transactions, including all of its Bank Transfers. Bank records have been produced both in conjunction with the 2004 examinations and in Arcon's monthly operating reports. If there are transactions between personal accounts and Arcon those transactions have all been documented in the Arcon's corporate ledger. Funds transferred from Andrey or Vladimir were documented loans or capital injections used specifically to sustain operations and payroll during difficult financial periods. This accounting trail proves corporate separation and a desire to keep the entity solvent, not commingling.

8. The reference to specific credit card usage and points based travel resulted from Arcon's lack of an independent credit standing for a "high limit" account. Andrey qualified and provided access to that account for convenience for Arcon. The travel referenced in 653 declaration and exhibits was the result of Andrey's personal credit points not the other way around. In other words the corporation was benefitted by lower costs. While Amex converts points to cash for statement payments—making them appear as cash transactions—no corporate cash was used. Any inadvertent personal charges were identified and reimbursed to Arcon.

9. As with other references 653 misunderstands and mischaracterizes the reference to "At-Cost"

2
Andrey Libov's Declaration ISO Opposition to 653 Motion
CASE NO. 24-30679 DM 11

Accounting and Overhead Allocation as it appears in written documentation for the identified projects. "At-cost" meant Arcon was paid for 100% of its expenses, including full overhead. Arcon utilized a professional pro-rata overhead allocation method, where costs were assigned to projects based on the percentage (%) of the total workload that project represented at that time to keep a clear financial picture between different projects. These payments specifically funded the salaries of the entire workforce, including the 25 direct employees of Arcon and the owner, Vladimir.

10. As with its misunderstanding and mischaracterizations above, 653 also mischaracterizes the contractual relationship for the Vistazio project. MinFin-SC-T1 Revenue & Interests: Arcon was paid $6,215,830.52 for this project, which is approximately 25% more than the original $4,474,470.35 contract. All permit fees and at-cost construction expenses were reimbursed back to Arcon in full. Andrey's 20% interest was strictly a "profits interest" (sweat equity) earned through personal services, with no ownership interest in the MInFin-SC-T1's company's capital.

11. Again 653 misunderstands and mischaracterizes the SOL LLC Project Revenue & Loan Reimbursal terms. The original contract amount was $7,460,904.31, but Arcon actually received $9,032,705.38, representing a more than 20% increase over the contract. The specific loan of $4,500 cited by the creditor was reimbursed in full; if there are any discrepancy in the records they represent a minor accounting entry, not a sign of improper conduct.

12. Again 653 misunderstands and mischaracterizes the Clara Street Project Revenue. The original contract amount for Clara Street was $2,900,000.00, but Arcon actually received $3,183,432.40. This surplus proves that the company was properly billing for changes and overages at arm's-length.

13. Again 653 misunderstands and mischaracterizes the Shipley Street Project. The contract for Shipley Street was $11,040,000.00, of which Arcon received $682,920.01. This project included some soft cost reimbursements but was ultimately terminated due to the economic downturn, which is a common industry occurrence and not a sign of commingling or mismanagement.

14. Again 653 misunderstands and mischaracterizes the entries relating to Management Transportation (The Rivian) and reimbursement or costs. Arcon provides transportation for its management team as part of a standard compensation package. Switching to a 2022 electric Rivian was a financially reasonable business decision to eliminate high fuel and maintenance costs compared to

previous gas-powered vehicles.

15. Again 653 misunderstands and mischaracterizes the Belmont Property identified as (Gene & Maria). This property is owned by Vladimir's older son Gene and his wife Maria. They are not Arcon employees and have never worked for the company. Arcon performed a partial remodel for approximately $128,000 and was paid in full, as documented in the corporate ledger.

16. Again 653 misunderstands and mischaracterizes the maintenance of Corporate Formalities, Scale, and Administrative Discipline. Arcon is a substantial, legitimate business with a 25-year history. It maintained an average of 25 direct employees and managed over 200 indirect employees through subcontractors. Arcon maintains: Separate Documentation: Every project has its own contract, separate client file, project-specific insurance, and accounting allocation. Separate Accounts: Arcon has its own dedicated bank accounts, separate tax filings, insurance, place of business, and Articles of Incorporation identifying the solo owner. Accounting Integrity: All projects are separately allocated in Arcon's documents to ensure a clear financial picture for the corporation.

17. As with each other mischaracterization 653 misidentifies Arcon's efforts and its intent to seek Chapter 11 Reorganization. The filing was necessitated by the economy and terminated projects (like Shipley Street). Arcon filed for Reorganization, not liquidation, specifically to continue the company's operations, keep all of its many employees working, and continue building beautiful projects in the San Francisco Bay Area. This demonstrates its commitment to remain a viable business and fulfill duties to all creditors.

18. Finally and as with each other mischaracterization 653 misidentifies the nature of the underlying state court litigation and the involvement of corporate personnel along with plan disclosures. It is axiomatic that as an involved employee, both I and Vladimir, would be involved in decision making in this case and in state court cases, it is part of the responsibilities we have to the corporation. At all relevant times Arcon has hired and used the benefit of independent counsel and has generally looked to such counsel for advice. There has always been professional separation and Arcon does not represent me or Vladimir in our individual capacities. At no time did 653 name me as a defendant in the state court action though it pled alter ego in its TACC. It never named Vladimir either. That pleading and its entries in its fee bills demonstrate that it has tried unsuccessfully to find a basis

for doing so since the litigation first began. It did identify an intent to pursue alter ego liability in its pleadings and no liability, on that basis, was found by the Court. This latest effort is equally unfounded.

19. All of the transfers that were identified in Arcon's schedules and in its Statement of Financial Affairs were made in the usual course of business. That evaluation was made at arm's length by separate counsel. Each of the identified transaction above further clarify that none were entered into for any improper purpose and therefore 653 has not identified any colorable claim to support any portion of its motion.

I declare under penalty of perjury pursuant to the federal laws and the laws of the state of California that the foregoing is true and correct. Executed this _15_ day of January, 2026.

Dated: 1/15/26                         _/s/Andrey Libov_____

                                       Andrey Libov, responsible party for Arcon