**United States Bankruptcy Court**
**Northern District of California**

In re:

Case No. 24-30679
Chapter 11

Arcon Construction Corporation
________________/

**[PROPOSED] COMBINED PLAN OF REORGANIZATION AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT**
(**September 24, 2026**)

**INTRODUCTION:**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The purpose of this Disclosure Statement is to provide information sufficient for You to make an informed decision on whether to vote to accept or reject the Plan. The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors, including a convenience class and others, all of whom will receive not less than **25%** of their allowed claims either in quarterly payments over **5 years, to wit, 20 equal installments, or in one installment for the convenience class** along with information about the sole Equity Security Holder(s). Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors, those in impaired classes, are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than __TBD__. The court will hold a hearing on confirmation of the Plan on TBD at TBD.

Attached to the Plan are exhibits containing financial

information concerning the Debtor that may help you decide how to vote and whether to object to confirmation. Some of the exhibits include background information regarding Debtor (Exhibit 1) and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan. Exhibit 5 provides an analysis of the feasibility of the Plan based on projected income after confirmation and is different than the income reflected in the monthly operating report. All other additional attachments are intended to assist in YOUR evaluation of the feasibility of the Plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts, (with certain exceptions, on confirmation of Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Creditors' Rights Have Changed.**

| Class | Name of Creditor | Description of Collateral | Monthly payment |
|---|---|---|---|
| 1B | Mercedes-Benz Fin. Srv LLC USA | Auto $20,916.24 | ~~$575.57~~ $676.00 |

These creditors' legal, equitable, and contractual rights have

been changed with respect to the above collateral. Debtor will pay off the outstanding obligation is a shorter period of time under the Plan with a higher payment than required under the contract. The confirmation order will constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|---|---|---|---|---|---|---|
| **1C** | **U.S. SBA** | ALL PROPERTY OWNED BY DEBTOR | $133,200.00 | 3.75% | $1,000.00 Monthly in compliance with SBA terms & Agreement | **UNTILL Paid in Full** |

Debtor will pay the entire amount contractually due, to the listed Creditor, with interest through equal monthly payments, due on the 8th day of the month, continuing the payments that have been ongoing, but starting under the Plan on the Effective Date. Creditor in this class shall retain their interest in the collateral until Debtor makes all payments, including the increased amount, on the allowed secured claim specified in the Plan. Payments to claimants in this class may continue past the date Debtor obtains a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

Creditor in this class may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This secured claim~~s~~ is impaired and is entitled to vote on confirmation of the Plan.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). Convenience Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|
| CG APPLIANCE | $5,745.00 | $1,436.25 |

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|
| Frontier Pacific | $2,644.10 | $661.03 |
| Tenderloin Neighborhood | $4,556.27 | $1,139.07 |
| L&W Supply | $4,360.05 | $1,090.00 |
| Wells Fargo Bank N.A. | $6,357.32 | $1,589.33 |
| INM DRYWALL | $10,496.26<br>If reduced to 10k | $2,500.00 |
| West Coast Installation | $11,019.70<br>If reduced to 10k | $2,500.00 |
| United Site Services | $11,160.97<br>If reduced to 10k | $2,500.00 |
| D Hahn & Associates | $13,791.00<br>If reduced to 10k | $2,500.00 |

This class includes any creditor whose allowed claim is $10,000.00 or less, and any creditor who could be listed in Class 2(b) and whose allowed claim is larger than $10,000.00 but not larger than $14,000.00, and who voluntarily agrees to reduce its claim to $10,000.00. These convenience class claims allow for economic efficiency of distribution over the proposed **20** quarterly plan payments avoiding payments as low as **$30.05** PER QUARTER and never greater than **$172.39** PER QUARTER. Each creditor will receive on the Effective Date of the Plan a single payment equal to 25% of its allowed claim or the agreed to amount of a reduced claim of $10,000.00. If any increase occurs to the overall percentage (%) of Plan payments made to Class 2b claimants Debtor will provide an additional one time only lump sum payment to the convenience class claimants equal in percentage (%) to the increased percentage (%) paid to Class 2b claimants.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

//

**Class 2(b). [Other] General Unsecured Claims.**

Allowed claims of general unsecured creditors [not treated as small claims] (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive **25%** percent of their allowed claim in **20** equal quarterly installments, due on the 15th day of the third month of each calendar quarter, and will be paid quarterly, as identified, starting in the first quarter that falls 30 days after the Effective Date.

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Quarterly Payment |
|---|---|---|---|---|
| 653 28th Street LLC | $1,544,626.61 | N | $386,156.65 | **$19,307.83** |
| Christopher M. Hunt | $225,253.08 | N | $56,313.27 | **$2,815.66** |
| Law Office of George W. Wolff | $254,188.89 | N | $63,547.22 | **$3,177.36** |
| Newity LLC | $80,351.00 | N | $20,087.75 | **$1,004.39** |
| Schindler Elevator | $25,529.80 | N | $6,382.45 | **$319.12** |
| J.P. Morgan Chase | $89,093.21 | N | $22,273.30 | **$1,113.67** |
| Master Roofing | $36,590.00 | N | $9,147.50 | **$457.38** |
| South City Lumber | $201,132.00 | N | $50,283.00 | **$2,514.15** |
| Crime Watch Security | $23,392.30 | N | $5,848.07 | **$292.40** |
| A & V Drywall | $39,400.00 | N | $9,850.00 | **$492.50** |
| Nick Mejia Painting | $130,610.00 | Y | $32,652.50 | **$1,632.63** |
| American Express | $68,124.69 | N | $17,031.17 | **$851.56** |
| INTERNAL REVENUE SERVICE | $39,227.32 | N | $9,806.83 | **$490.34** |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c). **This class is impaired and is entitled to vote on confirmation of the Plan.**

//

**Class 2(c). [Disputed] Disputed Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Quarterly Payment |
|---|---|---|---|---|
| Andy Lee & Shirley Lee | $9,912,200.50 | Y | $0.00 | $0.00 |

***Disputed Claim and Reserve Treatment.***

As of the Effective Date Debtor is informed that there will be one disputed claim, to wit, the *claim asserted by Andy Lee and Shirley Lee, (the "Disputed Claim").* Debtor disputes the Lee Claim in its entirety as to liability, quantum including any claims as to alleged damages, and the purported intent to raise derivative claims as individuals through the claims process. Debtor is informed and believes that there is an absence of standing, in favor of the Lees, as to their alleged derivative claim under both state and federal statute and that they have failed to demonstrate standing under both state and federal law (Cal. Corp. Code § 17709.02; FRCP 17 & FRBP 7017) and to plead facts sufficient to state a cause of action, such that the presumption of validity has not been met.

Based on a general release entered into by the Lees', with the benefit of counsel, and others, the Lees have the ability to seek redress from parties other than Debtor Arcon and Debtor is entitled to classify the claim separately. (See *In re Loop 76, LLC, 465 B.R. 525 (9th Cir. BAP 2012))*

Based thereon the Disputed Claim shall be provisionally estimated at $0.00 for purposes of establishing any Disputed Claim Reserve pursuant to section 502(c) of the Bankruptcy Code. This is intended to facilitate plan feasibility and avoid the requirement to set aside an expansive cash reserve for an inflated and heavily contested liability, no cash or property shall be reserved or set aside on account of the Disputed Claim on the Effective Date, *except as expressly provided herein.*

The Debtor, the Reorganized Debtor, and/or the Plan Agent (as applicable)shall retain the right and power to litigate, compromise, or settle the Disputed Claim asserted as against Arcon, Debtor and the Reorganized Debtor, --without the need for further notice or Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure. Debtor will make the same periodic payments which all allowed general unsecured creditors will

receive pro rata and the term of the plan will be extended until the GUC class including the allowed Lees claim have received payments totaling 25% of their claim.

**Class 3. Equity Interests.**

| Name of Equity Interest Holder | Equity Interest | Disputed Y/N |
|---|---|---|
| Vladimir Libov (Equity holder) | 100% | N |

This class consists of all equity (membership) interest in Debtor. The legal, equitable, contractual, and ownership rights of the holders of equity interests are unaltered by the Plan. The Plan does not cancel any membership interest in the Debtor. Upon the Effective Date, the holders of equity interests shall retain their equity interests.

Equity Holder is not impaired and is not entitled to vote on confirmation of the Plan.

Equity Holder is proposing to provide a contribution of new funds in exchange for the shareholder retaining 100% of the equity in the reorganized debtor and release of claims.

As originally proposed the new value contribution was calculated based on the negative market impact that the bankruptcy filing had on valuation of the company. That valuation has not changed and remains viable given increased energy costs and the continued status inside bankruptcy. 653 28th Street LLC, consistently an objecting creditor, has not presented an alternative valuation.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a) Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Sub-Chapter V Appointed Trustee HAYES | $19,545.76 |
| Appointed Trustee Smith | TBD |

| | |
|---|---|
| Appointed Trustee's Counsel | TBD |
| Appointed Trustee's Approved Accountant | TBD |

The following professionals have agreed to accept payment over time as follows. Payments will be made quarterly, due on the 8th day of the first month of each calendar quarter, starting 45 days after the Effective date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| Resolution Law Firm P.C. | TBD | TBD | TBD |

(b) Other Administrative Claims. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

**//**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| **n/a** | |

(c) Tax Claims. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest, per code, in equal amounts as agreed upon with the taxing creditor(s) in the identified monthly amount. Payments will be made monthly, due on the 15th day of the month, starting on the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)) and the agreement with the taxing creditor(s). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| **Name of Creditor** | **Estimated Amount of Claim** | **Statutory Interest Rate** | **Payment Amount** | **Number of Payments** |
|---|---|---|---|---|
| Internal Revenue Service | Secured $110,743.50 [1] | Per statute as calculated by adding 3 percentage points to the federal short-term rate for tax underpayments, compounded daily in accordance with IRC §6622. Rates adjust quarterly. Currently 7%, and 9% for debt exceeding $100,000 | $6,000.00 [FOR ENTIRE CLAIM AS CUMMULATIVE] | Monthly in compliance with IRS terms & Agreement (attached as Exhibit 6) |
| Franchise Tax Board | $926.44 | Per Code | $946.44 | once |

**Priority tax claimants are not entitled to vote on confirmation of the Plan.**

[1] Though the claim portions for the IRS claim are listed separately in the Plan the IRS does not distinguish between the secured portion and the priority portion in the language it requires as provided as Exhibit 6.

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | Unsecured Priority 208,919.67 [2] | Per statute as calculated by adding 3 percentage points to the federal short-term rate for tax underpayments, compounded daily in accordance with IRC §6622. Rates adjust quarterly. Currently 7%, and 9% for debt exceeding $100,000 | $6,000.00 FOR ENTIRE CLAIM AS CUMMULATIVE | Monthly payment in compliance with IRS terms & Agreement (attached as Exhibit) |

## PART 4: MEANS OF IMPLEMENTATION FOR PLAN

Debtor's single equity holder shall retain his equity ~~interests~~ interest in the Debtor in return for the payment of $100,000.00 in new value. Funds for the payment are from personal funds unrelated to the funds generated by the Debtor Corporation. The payment of the new value shall occur on the Effective Date of the Plan. The new value funds, as provided by the Equity Holder, will be directed to implementing the Plan on the Effective Date. The new value shall provide an immediate pool of funds for small claims and costs of administration.

The Plan will also be funded by the Debtor's continued business operations, post confirmation that will be modified to pursue individual residential projects as well as Debtor's historic multi-unit building projects. Feasibility is set forth in greater detail in the attached Exhibit 5 based on projected values post confirmation.

## PART 5: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Executory Contracts/Unexpired Leases Assumed. Debtor assumes all executory contracts and/or unexpired leases, not previously rejected, upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears, if any, will be paid in equal quarterly installments beginning on the first business day of 30 days after the Effective date.

[2] The IRS language, as provided in Exhibit 6, does not distinguish between secured and priority portions of its claim.

(b) Executory contracts and unexpired leases not specifically assumed or rejected will be deemed assumed.

**PART 6: APPOINTMENT OF PLAN AGENT AND PRESERVATION OF ESTATE CLAIMS**

(a) Claims and Causes of Action. All claims and causes of action of the Debtor and the bankruptcy estate ("Estate Claims") are expressly preserved and retained in the name of the Debtor following confirmation of the Plan. The Plan Agent, on confirmation of the Plan, will control the evaluation, investigation, prosecution, and /or settlement, if any, of Estate Claims in the case.

Any Estate Claim pursued or prosecuted post-confirmation by the Plan Agent may be fully and finally settled by the Plan Agent without seeking or obtaining approval of the Bankruptcy Court.

(b) The Plan Agent.

Following confirmation of the Plan, Nathan Smith, the appointed Trustee, shall serve as the Plan Agent. The Plan Agent will monitor Debtor's compliance with the Plan and may take any action necessary in the discretion of the Plan Agent to ensure the Debtor's compliance with the terms of the Plan.

The Plan Agent may engage legal counsel, including Ringstad & Sanders, LP ("R&S"), the law firm presently approved by the Court to represent the Trustee, to advise and assist the Plan Agent in his efforts to ensure that the goals of this Plan are fully achieved and to investigate and pursue any Estate Claims in the interests of the bankruptcy estate.

The Plan Agent may engage accounting services, including Edward Burr of Mac Restructuring Advisors LLC, (Dkt. No. 318) the accountant presently approved by the Court, to provide such accounting services, including forensic accounting, as the Plan Agent may require.

Post-confirmation fees and expenses of the Plan Agent and professionals employed by the Plan Agent will be entitled to receive payment on an ongoing basis for the services rendered. Such fees and expenses shall be paid first from funds generated by the Plan Agent post confirmation; and if no such funds are generated then such fees and expenses shall be treated as post-confirmation administrative fees to be paid by Debtor. Upon completion of such services, the Plan Agent and the Plan Agent's

professional shall file an application for approval of the final fees and costs incurred.

On realization of funds, if any, by the Plan Agent from any claim, lawsuit, and/or avoidance action, the Plan Agent may create a reserve account to pay for anticipated future fees and expenses prior to distribution of net residual funds

(c) Distribution of Net Funds from Estate Claims.

Upon payment of the final fees and costs of the Plan Agent and the professionals employed by the Plan Agent, all net funds remaining that were recovered by the Plan Agent shall be distributed, (i) first, to Creditors holding Allowed Administrative Claims, based on the pro rata share of such Claims, up to an amount that, in conjunction with other payments made to these Creditors under the Plan, renders such Creditors Paid in Full; (ii) second, to Creditors holding Allowed Priority Tax Claims, up to an amount that, in conjunction with other payments made to these Creditors under the Plan, renders such Creditors Paid in Full; and (iii) third to Creditors holding Allowed General Unsecured Claims, up to an amount that, in conjunction with other payments made to these Creditors, under the Plan and renders such Creditors Paid in Full, and (iv) fourth, pro rata to the holders of interests in the Debtor.

**DEBTOR HAS REVIEWED THE FACTUAL AND STATUTORY BASIS TO EVALUATE WHETHER CAUSES OF ACTION FOR FRAUDULENT TRANSFERS, VOIDABLE PREFERENCES, OR OTHER CLAIMS FOR RELIEF EXIST. DEBTOR CONTINUES TO ASSERT THAT BASED ON ITS BUSINESS JUDGMENT NO MEANINGFUL CLAIMS EXIST THAT ARE WORTHY OF PURSUIT.**

**THE TRUSTEE, PRE-CONFIRMATION, HAS NOT DETERMINED WHETHER THE ESTATE HOLDS ANY AVOIDANCE AND/OR PREFERENCE CLAIMS. INVESTIGATION IS ONGOING AND ANY AVOIDANCE AND/OR PREFERENCE CLAIMS THAT MAY EXIST WILL, IN LARGE PART, BE COMMENCED AFTER THE CONFIRMATION DATE.**

**AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR AVOIDANCE ACTION AND/OR OTHER ESTATE CLAIM(S) MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN, AN AVOIDANCE ACTION OR OTHER ESTATE CLAIM MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY POST-CONFIRMATION.**

## PART 7: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

(a) Discharge. Debtor shall receive a discharge of debts under 11 USC Section 1141(d) (1) and confirmation of the Plan.

(b) Vesting of Property. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided for in this Plan, subject to re-vesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) Plan Creates New Obligations. Except as provided in Part 6(d) and (e), the obligations to creditors created under Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

(d) MEANS OF IMPLEMENTATION. In addition to the commitment of payment from funds generated through the operation of the business the contribution of the new value funds, by the sole shareholder, will facilitate the feasibility of the Plan as set forth in Part 4 above.

**PART 8: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) Creditor Action Restrained. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) Obligations to Each Class Separate. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class.

(c) Material Default Defined. If Debtor fails to make any

payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the Bankruptcy court an extension of time to cure the default; or (iii) to obtain from the Bankruptcy court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) Remedies Upon Material Default. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's obligations under the Plan.

(e) Claims not Affected by Plan. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) Effect of Conversion to Chapter 7. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case as if from Chapter 13 to Chapter 7.

(g) Retention of Jurisdiction. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or as may specifically be contemplated in this Plan, including any action or proceeding commenced by the Plan Agent;(iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 9: GENERAL PROVISIONS**

(a) Effective Date of Plan. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) Disputed Claim Reserve: There remains one pending disputed claim. If any other claim becomes disputed **after confirmation** Debtor, and/or the Plan Agent, shall retain the power to settle and compromise it as a disputed claim without court approval unless the disputed claimant requests a court determination in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

At this time there are no allowed claims in this Class.

The disputed claim remains that as asserted by Andy Lee and Shirley Lee, (hereafter "Lees"& the "Disputed Claim"). The Claim was amended on or about October 21, 2025 Andy Lee and Shirley Lee, asserting a right to pursue a derivative claim on behalf of 255 Shipley Street LLC a California LLC in good standing. The Lees attached an alleged "proposed" unfiled complaint naming Debtor as a defendant. The Lees have never sought relief from the automatic stay to pursue a claim against Debtor in state court. The screen shots of the state court docket continues to identify that no amended complaint, naming Debtor as a defendant, has been filed in the California Superior Court and the complaint, as filed, has never been served on any party to the action. The Lees have not disavowed the existence of a general release that Debtor believes releases Debtor from all liability real and imagined that the Lees purport to assert as against Arcon. Based on the general release entered into by the Lees', with the benefit of counsel, they have redress from parties other than Debtor, Arcon. The Lee's ability to seek redress from others supports classification of the Lees claim (Claim No. 16) as a separate general unsecured class. (In re Loop 76, LLC, 465 B.R. 525 (9th Cir. BAP 2012)).

The Claim No. 16-1 is at issue.

The Debtor disputes the Disputed Claim in its entirety as to liability, quantum including any claims as to alleged damages,

and the claimants' standing to assert derivative rights on behalf of the underlying LLC. There is no privity between claimants and Debtor. The identified LLC remains in good standing. Other issues are also presented.

To facilitate plan feasibility and avoid the requirement to set aside an expansive cash reserve for an inflated and heavily contested liability, no cash or property shall be reserved or set aside on account of the Disputed Claim on the Effective Date, except as expressly provided herein.

The Disputed Claim shall be provisionally estimated at $0.00 for purposes of establishing any Disputed Claim Reserve pursuant to section 502(c) of the Bankruptcy Code.

The Debtor, the Reorganized Debtor, and/or the Plan Agent (as applicable) shall retain the right and power to litigate, compromise, or settle the Disputed Claim asserted as against Arcon, Debtor and the Reorganized Debtor, --without the need for further notice or Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure --provided that any settlement resulting in a cash distribution from the estate greater than $50,000.00 can but does not require Bankruptcy Court approval upon any party's motion. If the Disputed Claim is ultimately allowed as a final, non-appealable order, the claimant's recovery shall be satisfied solely from funds that Debtor may identify at a rate the same as the plan payment and the claimant shall have no recourse against any other assets of the Reorganized Debtor or the estate.

(c) Cramdown. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) Governing Law. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) Notices. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

DEBTOR:
Arcon Construction Corporation
Attn: Vladimir Libov
333 Gellert Blvd. #160
Daly City CA 94015
info@arcon-online.com

ATTORNEY FOR DEBTOR:
Resolution Law Firm P.C.
Attn: Sheila Gropper Nelson
900 Front Street, Suite 350
San Francisco CA 94111
shedoesbklaw@aol.com

TO THE APPOINTED TRUSTEE AND/OR THE PLAN AGENT:
NATHAN SMITH
Malcolm ♦ Cisneros, A Law Corporation
2112 Business Center Drive
Irvine, California 92612
Phone: (949) 265-1225
Fax: (949) 252-1032
Email: nathan@mclaw.org

WITH A COPY TO:
Todd C. Ringstad, Esq.
Ringstad & Sanders, LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
Email address: todd@ringstadlaw.com

(i) Corporate Governance. Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. Confirmation of this Plan shall constitute its judicial approval and shall bar any claim against its directors, members, professionals, or agents respecting the proposal, prosecution, approval, or implementation of the Plan, provided however, that claims for willful misconduct or gross negligence shall not be affected or otherwise barred by confirmation of this Plan. Existing management and corporate governance shall not be altered by confirmation of this Plan.

(j) Post Confirmation Management. Arcon Construction Corporation shall remain as the sole member of Debtor, to wit Vladimir Libov, will remains as the sole shareholder and Andrey Libov shall remain as the responsible individual for Debtor for the duration of the Plan.

(k) Deadline for Filing Claims. No deadline has yet been set by the Court for creditors to file a timely proof of claim.

(l) Post-Confirmation Status Report. Within 180 days following the entry of the Confirmation Order, the Plan Agent will file with the Bankruptcy Court a status report explaining the progress made in the investigation or existence of AVOIDANCE CLAIMS, if any , and the conduct of the Plan Agent toward bringing such claims, if any, to final resolution. The status report will be served on the United States Trustee, the Debtor, if applicable, and any parties

who file a request for special notice of post-confirmation matters. Unless otherwise ordered by the Bankruptcy Court, further status reports will be filed every 180 days and served on the same entities.

(m) Post-Confirmation United States Trustee Fees. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

Dated: 09/24/2025___ _/s/Andrey Libov

Dated: _09/24/2026__ __/s/_Sheila Gropper Nelson__________
Debtor
_/s/_Sheila Gropper Nelson________
Attorney for Debtor-out-of-possession

**Attorney Certification [this will be updated]**

I, _Sheila Gropper Nelson___, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no major alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified:

| | |
|---|---|
| Page 18 | (k) Post confirmation Plan Agent Report |
| Page 11 | (f) PLAN AGENT Language added |
| Page 13 | Part 6 (a) Debtor will receive a discharge on the Effective Date under 11 USC Section 1141 (d) (1) (A) (i), (ii), & (iii); & Pat (d) Means of Implementation. |
| Page 10 | Means of Implementation language added. |
| Page 9 | Identifies that payment to IRS is a combination of both secured and unsecured & priority debt which are identified separately in plan IRS monthly payment of $6,000.00.<br>Language identifying agreement with the IRS. |
| Page 8 | Removed language as to amortization in compliance with 11 U.S. C. Section 511 to conform to agreement with IRS. |
| Page 7 | Inclusion & treatment of Equity Security Holder & new fund contribution. |
| Page 2 | Date of Payment on Adjusted Secured Claim. |
| Page 3-4 | Convenience Class Claims, (Class 2a), identification of treatment for claims above $10,000.00 if reduced to $10,000.00. |
| Page 1 | Additional language in the introduction portion of the plan. |
| Page 1 | References language about Equity Security Holders in Part 2. |
| Page __ | Insertion of Part 4 for Implementation of Plan |
| Exhibit 1 | Heading. |
| Entire Doc. | Footer shows word "Individual" struck-out. |
| Exhibit 5 | Financial Feasibility and Economic Projection |
| Exhibit 6 | Agreement with IRS |

I declare that the foregoing is true and correct. Executed this 24th day of September, 2026__.

_/s/ Sheila Gropper Nelson___
Attorney for Debtor(s)

**Exhibit 1 - Events That Led To Bankruptcy and Debtor's Ongoing Business**

**General description of the business:**

Debtor, Arcon Construction Corporation, (hereafter Arcon), is a closely held corporation started in 1999 by Vladimir Libov. Since 1999 the Debtor, a single shareholder corporation, has been in the business of General Construction, specializing in the construction of multi-family buildings and high end single-family homes throughout the San Francisco Bay Area. Debtor intends to continue to be an active and contributing member of the Bay Area construction community, bridging the gap between modest single unit residential building and complex multiunit buildings, consistent with the work it has historically performed for more than 25 years. Its reorganization is intended to benefit both Debtor-in-possession and its community at large.

Andrey Libov, one of Vladimir Libov's children, has acted as COO for the past 6 years. He is the designated responsible party in the instant matter. His familiarity encompasses the business and the construction industry as it relates to Arcon and the San Francisco Bay Area.

**Events Leading to the Filing of the Voluntary Petition:**

As a general contractor, Arcon, like others in that industry, is subject to multiple factors not the least of which can be disgruntled property owners, sub-contractors, shifting demands from the city and county building departments, and the impact of market rates and limitations. Each of those influenced Arcon's revenue, completion schedules, and exposure to both actual and threatened litigation.

Although each variable always existed each was exacerbated by the onset of the Covid-19 pandemic and all ~~can and~~ were outside of Arcon's control. Those variables, together with the residual impact of Covid-19 pandemic, were significant factors that influenced Arcon's determination to seek reorganization through ~~the~~ Chapter 11 to continue to do business and keep its employees employed and to support the suppliers and sub-contractors and general Bay Area communities. The Plan, as proposed, will allow Arcon to maintain its active participation in those communities.

**Events Occurring During the Pendency of the Bankruptcy:**

As a direct result of others' conduct, Arcon was subject to continuing litigation long past its filing on September 13, 2024, well into the summer of 2025. A significant portion of that time was the

result of the refusal of its prior state court attorney to file the substitution of counsel form that he demanded from Arcon and that Arcon signed and returned to him for filing in state court. Arcon dealt with that obstructionist behavior while mounting a reasoned defense to the computation of attorney's fees in the state court matter pursued by 653 28t Street LLC, the most active objecting creditor in the bankruptcy. That defense saw a modest reduction of the fees allowing 653's claim to be finalized. 653 remains the most vocal objector to the reorganization.

653 also sought authority to pursue alter ego claims as against Arcon and its principal and COO; or in the alternative to pursue derivative claims within the bankruptcy proceedings. To avoid further burdens on the Debtor's estate the Court appointed a Trustee, Nathan Smith. There was never any finding by the Court that Arcon was mismanaged. Debtor, Arcon, has worked cooperatively with the Trustee since his appointment and anticipates continuing to do so after confirmation of the Plan with the Trustee in the position as Plan Agent.

**Management:**

Management will remain the same with the owner/sole shareholder who will be contributing new value to help to fund the Plan of Reorganization.

In furtherance of its reorganization Arcon has undertaken a thorough review of its forms and procedures and has reevaluated the contents of its contracts, forms and future insurance needs, while maintaining its experienced staff and sole owner.

**SUMMARY OF THE PLAN OF REORGANIZATION:**

The Plan of Reorganization (the "Plan"):

Debtor's sole owner will contribute $100,000.00 from his personal funds for distribution on the Effective Date in compliance the Plan. ~~The~~ Any residual of said contribution shall be used to provide ongoing payments after the Effective Date in compliance with the Plan.

Debtor projects that the total amount paid to general unsecured creditors will equal **$707,035** exclusive of the contribution of new funds and not including payments to secured and priority claimants, consistent with the Plan. The single class of Equity Security Holder remains unchanged.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | Apprx. $270,828.00 | $133,611.20 | n/a | $137,216.80 |
| Mercedes 2020 | $20,916.24 | $20,916.24 | | 0.00 |
| Ford F-150 2019 | $6,000.00 | | n/a | $6,000.00 |
| Ford F-150 2020 | $7,000.00 | | n/a | $7,000.00 |
| Ford Escape | $5,000.00 | | n/a | $5,000.00 |
| BobCat | $2,500.00 | | n/a | $2,500.00 |
| Trailer 2014 | $3,000.00 | | n/a | $3,000.00 |
| Tools and equipment | $2,000.00 | | n/a | $2,000.00 |
| Office furniture | $2,000.00 | | n/a | $2,000.00 |
| Office equipment | $1,000.00 | | n/a | $1,000.00 |
| TOTAL | | | | $165,716.80 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $165,716.80 |
| Chapter 7 Administrative Claims | $15,000.00 |
| Chapter 11 Administrative Claims | Apprx. $69,545.76 |
| Priority Claims | $170,592.79 |
| Chapter 7 Trustee Fees | TBD |
| Chapter 7 Trustee's Professionals | TBD |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | ($89,420.75) |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $2,788,422.25 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 25% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |



Case: 24-30679 Doc# 336 Filed: 09/24/26 Entered: 09/24/26 16:15:57 Page 23 of 32

**Exhibit 3 - Monthly Income and Expenses**

| **Income** | Amount |
|---|---|
| Gross Income | $512,575.61 |
| **A. Total Monthly Income** | **$512,575.61** |

| **Expenses**<br>Includes Plan Payments on Secured Claims for Car | Amount |
|---|---|
| Cost of Goods Sold | $417,749.12 |
| Payroll | $44,414.26 |
| Rent | $3,987.19 |
| Insurance (GL, Auto, Workers compensation) | $14,436.49 |
| Telephone / Internet | $985.88 |
| IT Services (QuickBooks, Gmail, Buildertrend, Fieldwire) | $2,233.82 |
| Auto Expenses (Gas, FasTrak) | $2,207.76 |
| Office Supplies / Materials | $152.82 |
| Daly City Business License (annual cost divided by 12 months) | $512.58 |
| Auto Lease/Loan Payments | $3,648.41 |
| Tax preparation services | $345.42 |
| **B. Total Monthly Expenses** | **$490,673.75** |

| | |
|---|---|
| **C. Disposable Income** (Line A - Line B) | **$21,944.31** |

| **Plan Payments**<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | $3,350.60 |
| IRS Payments | $6,000.00 |
| SBA Loan payments | $1,000.00 |
| General Unsecured Creditors (non-convenience class only apprx monthly) | **$11,489.66** |
| Franchise Tax Board – total debt $926.44 / one payment | $926.44*[3] |
| **D. Total Plan Payments** | **$21,840.27*** |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | **$104.05** |

[3] * The payment to the Franchise Tax Board will occur on the Effective Date. It reduces the amount of total quarterly Plan payments by $15.44 per month reflected in the "Total Plan Payments" number identified in the chart.

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $270,828 |
| Payments on Effective Date | | |
| Unclassified Claims | N/A | |
| Administrative Expense Claims | $19,545.76 | |
| Priority Claims (single payment) | $926.44 | |
| Small Claims (Class 2(a)) | $15,915.69 | |
| U.S. Trustee Fees | tbd | |
| B. Total Payments on Effective Date | | $36,387.89 |
| **C. Net Cash on Effective Date** (Line A - Line B)<br>(Not feasible if less than zero) | | $234,440.12 |
| | | |

**Exhibit 5 Financial Feasibility of Plan.**

In support of the Debtor's ability to fund the proposed Plan of Reorganization, the Debtor has provided an analysis that relies on projected financial information, the continuation of the corporate entity as a going concern, and its intent to continue entering into construction contracts.

The Debtor's financial projections demonstrate that sufficient funds will be available over the five-year Plan term to satisfy administrative expenses, priority tax claims, secured obligations, and to make pro rata distributions to general unsecured creditors. Under the Plan, general unsecured creditors are projected to receive an aggregate distribution of **$707,035**, which represents **25 cents** on the dollar of their Allowed Claims.

The Plan is feasible for the reasons set forth below.

The Debtor's obligations under the Plan will be funded from three primary sources:

**(i)** Not less than $45,000 in cash from the bank account,

**(ii)** At least $562,035, projected cumulative profits, over the five-year Plan term generated from ongoing operations (Table 2)

**(iii)** $100,000 capital contribution from the sole shareholder.

The financial projections underlying the Plan are based on the Debtor's historical performance and conservative assumptions, as follows:

**Gross Revenues.** The Plan assumes average annual gross revenues of approximately $6.2 million. This figure is consistent with the Debtor's historical performance over the past ten years (Table 1).

Table 1. Debtor's Revenue by year

| Year | Revenue |
|---|---|
| 2015 | $5,300,753 |
| 2016 | $5,710,800 |
| 2017 | $4,090,033 |
| 2018 | $5,535,029 |
| 2019 | $7,111,296 |
| 2020 | $5,996,982 |
| 2021 | $9,537,792 |
| 2022 | $5,646,737 |
| 2023 | $2,424,872 |
| 2024 | $10,154,779 |
| **Total** | **$61,509,073** |
| Avrg for 10 years | $6,150,907 |

A ten-year revenue history was selected for the projections because it captures both peak and trough difficult years, and provides a normalized view of the Debtor's operations. In particular, revenues from 2019 through 2021 were adversely affected by the COVID-19 pandemic and associated market disruptions. By using the full ten-year average, the projections avoid distortion from this extraordinary event and better reflect the Debtor's long-term operating capacity. These revenues are substantiated by the Debtor's filed tax returns.

Debtor's project sales cycle is approximately 18 to 24 months. Accordingly, the industry disruptions associated with the COVID-19 pandemic had a delayed financial effect. Public-health restrictions in 2020–2021 slowed project approvals, permitting, and the commencement of new construction work. As fewer new projects were initiated during that period, and given the 1.5–2 year sales cycle, the decline in project starts, resulted in reduced revenues in 2023.

In 2024, the Debtor's revenue were approximately $10.2 million, of which nearly 76% was attributable to a single large project, the Saratoga contract, valued at $15 million.

At present, while the Debtor remains in the reorganization process, securing large-scale projects continues to be challenging due to restrictions associated with Debtor's bankruptcy status. Nonetheless, the Debtor is actively maintaining relationships with potential clients who are prepared to enter into substantial contracts once the Plan is confirmed and reorganization is completed. Accordingly, the Debtor's short-term strategy is to diversify by securing multiple smaller projects in the range of $2 million each, which is expected to achieve the targeted revenue level of approximately $6 million annually on a sustainable basis. Following confirmation of the Plan, the Debtor will resume efforts to obtain larger projects as a general contractor, in order to further enhance profitability and long-term growth.

In 2025 Debtor successfully started two new projects, one valued at $1.4 million and the other at $0.7 million. These contracts, totaling $2.1 million, demonstrate the Debtor's ongoing ability to obtain new work and support the projected revenue levels under the Plan.

**Risk Mitigation Measures and Professional Liability Coverage.** As part of its efforts to ensure the Plan's long-term feasibility and reduce exposure to litigation risks, Debtor has undertaken a review of its standard construction contract. The provision requiring Debtor to indemnify counterparties for attorneys' fees in the event of litigation will be removed to minimize contractual exposure. Additionally, Debtor will obtain Errors & Omissions insurance coverage to protect against potential future legal expenses and claims related to professional


Case: 24-30679 Doc# 336 Filed: 09/24/26 Entered: 09/24/26 16:15:57 Page 27 of 32

services and construction operations. The anticipated annual premiums for such coverage have been included in the projected operating costs (Table 2).

**Gross Margin.** Debtor's historical markup has ranged between 18% and 19%. For projection purposes, an average gross margin of 18.5% has been used.

**Operating Expenses.** Operating expenses are assumed at their current levels, consistent with historical operations. A detailed breakdown of projected operating expenses is provided in Table 2.

**Inflation.** For simplicity of evaluation, the impact of inflation has not been incorporated into the projections. However, the Debtor anticipates that inflationary effects will similarly impact both revenues and expenses, which is expected to result in a neutral net effect on projected profitability.

**Payroll.** Payroll has been calculated based on the current number of employees and existing compensation levels. Debtor has undertaken to reduce, wherever possible, payroll expenses.

**Income Taxes.** Corporate income taxes have been calculated at the current federal rate of 21%. The projections reflect Debtor's lawful use of available net operating loss carryforwards (NOLs) from prior years.

**Operational Improvements Supporting Feasibility**

To support the long-term feasibility of the Plan and improve operational efficiency, the Debtor has implemented several organizational and project-management enhancements:

**1. Project Management System.**
Debtor has adopted Buildertrend, a construction-specific project management platform, to manage scheduling, subcontractors, job costing, and project documentation. This system improves oversight, reduces administrative errors, and allows real-time tracking of project progress and financial performance.

**2. Experienced Project Managers.**
Debtor hired experienced Project Managers with prior industry background. This addition has strengthened day-to-day project supervision, improved coordination with subcontractors, and enhanced overall project delivery.

**3. Project-Level Financial Accounting.**
Debtor has implemented project-based financial accounting to track revenues, costs, and margins for each job. This approach allows

management to monitor profitability during all phases of a project and make timely adjustments to maintain target margins.

**4. Implementation of Budgeting Procedures.**
The Debtor is establishing a formal budgeting process to improve financial planning. This process will support consistent management of cash flow and operating expenses throughout the Plan term.

**5. Diversification of Project Portfolio.**
Debtor is transitioning away from reliance on one or two major contracts and is instead focusing on securing multiple mid-sized projects. Beginning in 2025, the Debtor also expanded its service offerings by taking on remodeling jobs, which the company had not previously pursued. This diversification reduces revenue-concentration risk, broadens the company's client base, and provides a more stable and consistent project pipeline.

**6. Prioritizing Repeat Clients.**
Debtor intends to prioritize work with repeat clients, who historically present lower default risk and shorter sales cycles. This strategy is expected to support a steady flow of new contracts and improve predictability of revenues.

Because these assumptions are grounded in actual historical data and reflect Debtor's long-term operating experience, Debtor believes they provide a reliable basis for forecasting future performance under the Plan.

Based on these assumptions and the inclusion of a $100,000 owner contribution as a financial safeguard, the Debtor believes the Plan is feasible and that Debtor will have sufficient resources both on the Effective Date and throughout the Plan Term to meet all obligations under the Plan.

**Table 2** **Five-Year Profit Forecast**

| **Category** | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** | **Total for 5 years** |
|---|---|---|---|---|---|---|
| Revenue | $6,150,907 | $6,150,907 | $6,150,907 | $6,150,907 | $6,150,907 | $30,754,537 |
| Cost of Goods Sold | $5,012,989 | $5,012,989 | $5,012,989 | $5,012,989 | $5,012,989 | $25,064,947 |
| Operational Payments: | | | | | | $0 |
| Payroll | $532,971 | $532,971 | $532,971 | $532,971 | $532,971 | $2,664,856 |
| Rent | $47,846 | $47,846 | $47,846 | $47,846 | $47,846 | $239,231 |
| Current Insurance | $146,738 | $146,738 | $146,738 | $146,738 | $146,738 | $733,690 |
| Error and omission insurance (new) | $26,500 | $26,500 | $26,500 | $26,500 | $26,500 | $132,500 |
| Tax preparation services | $4,145 | $4,145 | $4,145 | $4,145 | $4,145 | $20,725 |
| Telephone / Internet | $11,831 | $11,831 | $11,831 | $11,831 | $11,831 | $59,153 |
| IT Services (QuickBooks, Gmail, Buildertrend) | $26,806 | $26,806 | $26,806 | $26,806 | $26,806 | $134,029 |
| Auto Expenses (Gas, FasTrak) | $26,493 | $26,493 | $26,493 | $26,493 | $26,493 | $132,466 |
| Office Supplies / Materials | $1,834 | $1,834 | $1,834 | $1,834 | $1,834 | $9,169 |
| Daly City Business License | $6,151 | $6,151 | $6,151 | $6,151 | $6,151 | $30,755 |
| | | | | | | |
| Auto Lease Payments | $43,781 | $43,781 | $43,781 | $43,781 | $43,781 | $218,905 |
| Payments to IRS | $72,000 | $72,000 | $72,000 | $72,000 | $31,663 | $319,663 |
| SBA Loan Repayments | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $60,000 |
| Franchise Tax Board | $800 | $800 | $800 | $800 | $800 | $4,000 |
| | | | | | | |
| Subchapter V Trustee Fees | $19,545 | $0 | $0 | $0 | $0 | $19,545 |
| Chapter 11 Trustee | $20,000 | $0 | $0 | $0 | $0 | $20,000 |
| Chapter 11 Trustee Fees | $49,207 | $49,207 | $49,207 | $49,207 | $49,207 | $246,036 |
| Administrative Claims | $18,000 | $18,000 | $14,000 | $0 | $0 | $50,000 |
| IRS: Corporate income tax - current | $0 | $7,361 | $8,182 | $8,350 | $8,938 | $32,832 |
| **Forecasted Disposable Income** | **$71,270** | **$103,454** | **$106,633** | **$120,465** | **$160,214** | **$562,035** |

**EXHIBIT 6**
**INTERNAL REVENUE SERVICE AGREEMENT TERMS PROVIDED TO DEBTOR FOR PLAN INCLUSION:**

All payments made under the Plan shall be made in the form of cashier's check or certified funds and made payable to the United States Treasury and mailed or delivered to Internal Revenue Service, Attention: Rhonda Roberts, Insolvency Specialist, at Mail Stop SA-5210, 4330 Watt Avenue, Sacramento, CA 95821-7012.

The IRS may apply all Plan payments to the bankruptcy proof of claim for unpaid taxes, penalties or interest as it, the IRS, in its sole discretion, may determine.

During the pendency of the Plan, Debtor agrees to timely file all required federal tax returns. The required returns shall be filed according to the requirements of the Internal Revenue Code. Copies of the returns shall be sent, within ten days of the filing due date of the tax returns, to the IRS at the following address: Internal Revenue Service, Attention: Rhonda Roberts, Mail Stop SA-5210, 4330 Watt Avenue, Sacramento, CA 95821-7012.

Notwithstanding the provisions of 11 U.S.C. § 114l(d) or any other provision of this Plan or the Order confirming the Plan, the Debtor shall not receive a discharge as to the IRS's pre-petition secured, priority, and unsecured general claims until the amounts provided for in this Plan as to the IRS's secured claim has been paid in full.

Notwithstanding any other provisions of the Plan or the Order confirming this Plan, if the Debtor or the reorganized Debtors fails to timely make any of the payments on federal taxes provided for in this Plan or fails to timely file its tax returns and pay any of its post-confirmation taxes during the duration of this Plan, the IRS may declare that the Debtor is in default under the Plan by written notice to the Debtor and its counsel of record. Failure to declare that the Debtor is in default does not constitute a waiver by the IRS of its right to declare that the debtor is in default.

If the default is not cured within ten (10) days of the date the Notice was mailed to the Debtor and its counsel, then the IRS will have the right to seek relief from stay or file a Motion to Dismiss or Convert the case on 14 days notice.

The IRS shall have the right to declare immediately due and payable the entire unpaid liability under the Plan together with any current liabilities and any interest or penalties which would have accrued on the pre-petition tax liabilities of the Debtor but for the filing of the

Bankruptcy Petition, and if the Debtor fails to pay the interest and penalties, then they may be assessed by the Service.

If the Debtor defaults more than three (3) times under the terms of the Plan, then the IRS will not further notify the Debtor and counsel of the default but will proceed with either a Motion for Relief from Stay or Motion to Dismiss or Convert.


Case: 24-30679 Doc# 336 Filed: 09/24/26 Entered: 09/24/26 16:15:57 Page 32 of 32